GURNEY P. HOOD, COMMISSIONER OF BANKS OF THE STATE OF NORTH CAROLINA; S. G. OWENS, ASSISTANT LIQUIDATING AGENT OF THE BANK OF MURPHY, ON RELATION OF THE BANK OF MURPHY, OF MURPHY, NORTH CAROLINA; AND THE BANK OF MURPHY v. L. E. BAYLESS.

(Filed 19 September, 1934.)

**1. Banks and Banking B c—Director held not liable on note to bank where condition upon which it was to be used did not transpire.**

Where all the evidence tends to show that the directors of a bank executed their promissory notes to the bank under a contract stipulating that at the end of two years the notes were to be used if by their use the bank could pay depositors in full, reorganize and continue in business,

and that otherwise the notes were to be returned to the makers, and that at the expiration of the two-year period the use of the notes would not enable the bank to pay depositors, reorganize and continue in business, and there is no evidence in contradiction, a judgment as of nonsuit in an action thereon by the liquidating agent of the bank will not be held for error.

**2. Trial D a—Nonsuit will not be held for error where evidence warrants directed verdict in defendant's favor.**

A nonsuit and dismissal under the Hinsdale Act has the same legal effect as a directed verdict, and where, in an action on a note, there is no evidence in contradiction of defendant's evidence constituting a complete defense to the action, a judgment as of nonsuit will not be held for error, since the evidence would support a directed verdict in defendant's favor, the court not weighing the evidence, but taking it to be true.

APPEAL by plaintiffs from *McElroy, J.,* at June Term, 1934, of CHEROKEE. Affirmed.

*Gray & Christopher for appellants.*
*Moody & Moody and D. Witherspoon for appellee.*

PER CURIAM. This is an action instituted by the plaintiffs against the defendant upon a paper-writing purporting to be a note signed by the defendant, which the defendant admits he signed but alleges that it was understood and agreed by him and the plaintiffs' representative at the time of the delivery thereof that it was to be used and to become a binding obligation only if the use thereof at the end of two years, when a "freezing" agreement with certain depositors had expired, all the depositors of the bank then closed could be paid in full and the bank reorganized and continued in business, and if it appeared that at said time that the depositors could not be paid in full and the bank reorganized and continued in business there were to be no liabilities thereunder, and the paper was to be surrendered and canceled.

The plaintiffs' witness, S. G. Owen, in charge of the liquidation of the bank, on cross-examination testified that there is a record of the bank relative to this note, and four similar ones, in the following words: "Being secured notes given by officers and directors to be held as security against loss to general deposits to be used at the end of the contract period, if found necessary." Albert H. Blake, who reopened the Bank of Murphy under direction of the Banking Department, as a witness for the plaintiffs, explained the entry above quoted as follows: "I will explain what I mean by that entry. It was necessary to make an entry of this $5,000, so I charged loans and discounts, and credited deposits, the explanation being 'Secured notes given by officers and directors to be held as security against loss to general depositors, to be used at the end of the contract period, if found necessary,' though this

bank was supposed to be left alone for a period of two years. In the event that this additional sum of $5,000 was not sufficient to pay off the depositors and keep the bank open at the expiration of two years, the notes under the agreement would be given back to the makers. If at the end of two years, if the bank could remain open by the payment of this $5,000, then it was to become an actual asset of the bank."

There was other evidence corroborating and none contradicting the evidence quoted. All of the evidence tended to show that at the end of the two years referred to in the agreement the depositors could not be paid in full, and that the bank could not be reorganized nor continued in business, even with the payment of the five notes for $1,000 each.

"The legal effect of a directed verdict is the same as that of a nonsuit or dismissal under the statute (Hinsdale Act), the court does not weigh the evidence, but assumes it to be true in favor of the defeated party." *In re Will of Deyton,* 177 N. C., 494 (503). If the "legal effect of a directed verdict is the same as that of a nonsuit or dismissal under the statute," it follows that a nonsuit and such dismissal has the same legal effect as a directed verdict. Not weighing the evidence in this case, but assuming it to be true in favor of the plaintiffs, we think his Honor was warranted in directing a verdict for the defendant, and, therefore, committed no reversible error in granting his motion for judgment as of nonsuit.

Affirmed.