## GENERAL AMERICAN LIFE INSURANCE COMPANY v. YETTIE STADIEM ET AL.

(Filed 14 April, 1943.)

**1. Bills and Notes § 10d: Banks and Banking § 8a—**

The payee of an unaccepted, uncertified check has no right of action against the bank upon which the check is drawn, for he is in no position to allege a breach of legal duty and no action at law can be maintained except there is shown to have been a failure in the performance of some legal duty.  C. S., 3171.

**2. Bills and Notes § 10a: Banks and Banking § 8a—**

The drawer of a check on a bank may maintain an action against the bank for breach of contract to honor his check.

**3. Pleadings §§ 13½, 15—**

Demurrer is to test the sufficiency of a pleading, admitting for the purpose the truth of factual averments well stated and such relevant inferences as may be deduced therefrom, but it does not admit any legal inferences or conclusions of law asserted by the pleader.  C. S., 511 (6).

**4. Banks and Banking § 8a: Bills and Notes § 27: Negligence § 19a—**

Where complaint, in an action for damages, alleges that a bank negligently refused to pay a check, given on it by a policyholder to an insurance company in payment of a policy premium, and induced the company by careless misrepresentations to decline to pay the policy, in consequence of which the company suffered damages in litigation over the policy, a demurrer was properly sustained, as the proximate cause of the company's loss was not the negligence of the bank but the independent act of the company in refusing to pay the insurance.

**5. Negligence § 5—**

Proximate cause requires a continuous and unbroken sequence of events, and where the original wrong only becomes injurious in consequence of the intervention of some distinct wrongful act or omission on the part of another or others, the injury is to be imputed to the second wrong as the proximate cause, and not to the first, or more remote cause.

APPEAL by plaintiff from *Grady, Emergency Judge,* at May Term, 1942, of LENOIR.

Civil action in tort to recover damages for alleged wrongful refusal to honor check, and in contract to recover the amount of the check.

The complaint, in substance, alleges:

1. That on 3 September, 1933, the plaintiff issued to David P. Cauley a certificate of insurance under a group policy taken out by the Federal Postal Employees Association in the face value of $3,000, and payable to Ruth Sutton Cauley, wife of the insured, as beneficiary.

2. That in August, 1939, the insured mailed to the Federal Employees Postal Association, collecting agent for the plaintiff, a check for $21.38, drawn on the First-Citizens Bank and Trust Company (Kinston, N. C.),

in payment of the semiannual premium due on his certificate of insurance 1 August, 1939.

3. That on 1 September, 1939, the insured deposited with the defendant, First-Citizens Bank & Trust Company, the sum of $21.38 "for the specific and sole purpose of covering the $21.38 premium check . . . and David P. Cauley instructed the agents and employees of the defendant bank that said funds were to be held solely for such purpose, thereby creating a special deposit."

4. That theretofore, on 13 July, 1939, the said David P. Cauley had drawn a check on the Branch Bank & Trust Company (Kinston, N. C.) for $5.25, payable to the order of H. Stadiem; that this check was written in pencil, signed "D. P. Cauley," and was delivered to the manager of the business known as "H. Stadiem" and agent of the defendant, Mrs. Yettie Stadiem, with the understanding and agreement "that said check would not be presented to the bank upon which it was drawn or any other bank for payment."

5. That on 4 September, 1939, the manager of the business conducted by Mr. Yettie Stadiem altered, changed and forged the $5.25 check above mentioned by changing the name of the drawee bank from "Branch Banking & Trust Company" to First-Citizens Bank and Trust Company, and presented said check, so altered and forged, to the teller of the defendant bank, who wrongfully and unlawfully cashed said check and debited it against the special deposit of $21.38 standing in the name of David P. Cauley.

6. That the premium check for $21.38 was duly deposited by plaintiff's agent in the Colorado National Bank of Denver, Colorado, for collection, and in due course reached the First-Citizens Bank & Trust Company, Kinston, N. C., on or about 12 September, 1939; that said defendant bank wrongfully and negligently failed to pay said check, marked it "insufficient funds," and transmitted it back to plaintiff's agent.

7. That the insured, David P. Cauley, died on 15 September, 1939, and the beneficiary in said certificate demanded of plaintiff that it pay the face value thereof.

8. That relying upon the representations of the defendant bank that said premium check was worthless, the plaintiff declined to pay the insurance; that suit was brought on said certificate and after two trials in the Superior Court of Lenoir County and two appeals to the Supreme Court of North Carolina (see *Cauley v. Ins. Co.,* 219 N. C., 398, 14 S. E. [2d], 39; 220 N. C., 304, 16 S. E. [2d], 221), the beneficiary recovered the amount of the policy.

9. That plaintiff is entitled to recover as damages its costs in defending said action, amounting to $2,596.48, and "the defendant Bank is also

indebted to the plaintiff in the sum of $21.38, the face amount of said check, the payment of which was wrongfully and unlawfully refused by the said Bank."

Wherefore, plaintiff prays recovery of damages and the amount of the check.

A demurrer was interposed by the defendants, and each of them, on the grounds that the complaint does not state facts sufficient to constitute a cause of action; that the damages alleged are too remote, and that no proximate cause exists between the negligence alleged and the loss sustained.

From judgment sustaining the demurrer and dismissing the action, the plaintiff appeals, assigning error.

*Smith, Wharton & Jordan for plaintiff, appellant.*
*F. E. Wallace for defendant Bank, appellee.*
*John G. Dawson for defendants Stadiem, appellees.*

STACY, C. J. The question for decision is whether the complaint states facts sufficient to constitute a cause of action, either in contract or in tort. C. S., 511, subsec. 6. The office of a demurrer is to test the sufficiency of a pleading, admitting for the purpose the truth of factual averments well stated and such relevant inferences as may be deduced therefrom, but it does not admit any legal inferences or conclusions of law asserted by the pleader. *Leonard v. Maxwell, Comr.,* 216 N. C., 89, 3 S. E. (2d), 316; *Harris v. R. R.,* 220 N. C., 698, 18 S. E. (2d), 204. Hence, we must look to the allegations of the complaint to ascertain the questions presented.

## I. THE ACTION IN CONTRACT.

The plaintiff seeks to recover in contract on the allegation that "the defendant Bank is indebted to the plaintiff in the sum of $21.38, the face amount of said check." This is a mere conclusion of the pleader, and it is not supported by the facts alleged. In the absence of an acceptance or agreement to pay Cauley's check, the Bank assumed no liability to the plaintiff or its agent, the payee named therein. *Perry v. Bank,* 131 N. C., 117, 42 S. E., 551; *Bank v. Bank,* 118 N. C., 783, 24 S. E., 524, 32 L. R. A., 712, 54 Am. St. Rep., 753. "The transaction of giving the check does not . . . substitute the checkholder for the drawer. The latter may maintain an action for the breach of the contract to honor his check, and if the holder has a similar right, the result is, that two persons may maintain separate actions upon the same instrument at the same time to recover against the same defendant as a principal debtor. . . . The bank's agreement with the depositor involves or implies no agreement with the holder of the check. . . . Being liable to

the drawer to account with him for failure to honor his check, the bank cannot, on either legal or equitable considerations, be held at the same time liable to the holder of the check"—*Spear, J.,* in *Cincinnati, Etc., R. Co. v. Bank,* 54 Ohio St., 60, 31 L. R. A., 653, 56 Am. St. Rep., 700, quoted with approval in *Perry v. Bank, supra.*

In *First National Bank v. Whitman,* 94 U. S., 343, cited by *Walker, J.,* in *Trust Co. v. Bank,* 166 N. C., 112, 81 S. E., 1074, as authoritative, it is said: "We think it clear, both upon principle and authority, that the payee of a check, unaccepted, cannot maintain an action upon it against the bank on which it is drawn." *Dawson v. Bank,* 196 N. C., 134, 144 S. E., 833.

Indeed, it is provided by C. S., 3171, that a check of itself does not operate as an assignment of any part of the funds to the credit of the drawer with the bank, and the bank is not liable to the holder unless and until it accepts or certifies the check. *Brantley v. Collie,* 205 N. C., 229, 171 S. E., 88.

Such is the law as it obtains with us in respect of checks, albeit we have in a number of cases held that "where a contract between two parties is made for the benefit of a third, the latter may sue thereon and recover although not strictly a privy to the contract." *Rector v. Lyda,* 180 N. C., 577, 105 S. E., 170; *Gorrell v. Water Supply Co.,* 124 N. C., 328, 32 S. E., 720. These latter cases are grounded on principles of equity, not presently applicable to the plaintiff's suit. The arguments, *pro* and *con,* on the subject are fully set out in *Cincinnati, Etc., R. Co. v. Bank, supra,* and the reasoning of the majority view quoted with approval in *Perry v. Bank, supra.*

It is suggested, however, that the basis of the minority view was followed in *Cauley v. Ins. Co.,* 219 N. C., 398, 14 S. E. (2d), 221, where it was said that if the "final cash returns" were still rightfully available to plaintiff's agent, the judgment of nonsuit would seem to be at variance with the rights of the beneficiary named in the policy. The expression, "final cash returns," was a quotation from the receipt issued by plaintiff's agent, and the thought prevailed that if the insured had in reality given a valid check for his premium in accordance with their previous custom, the policy ought not to be forfeited without an opportunity to make good the "final cash returns." Indeed, the premium check was collectible, if not collected, in that suit.

Hence, according to the law as it obtains in this jurisdiction, the facts stated are not sufficient to constitute a cause of action against the defendant Bank for the amount of the check.

## II. THE ACTION IN TORT.

It follows from what is said above that the demurrer to the complaint on the cause of action sounding in tort was likewise properly sustained.

If a bank be not liable to the holder of a check "until and unless it accepts or certifies the check," the payee has no right of action against the bank on an unaccepted or uncertified check, for he is in no position to allege a breach of legal duty, and no action at law can be maintained except there is shown to have been a failure in the performance of some legal duty. *Diamond v. Service Stores,* 211 N. C., 632, 191 S. E., 358; *Hood, Comr. of Banks, v. Bayless,* 207 N. C., 82, 175 S. E., 823.

Moreover, the proximate cause of plaintiff's loss was not the negligent dishonor of the premium check, but the subsequent independent act of the plaintiff in refusing to pay the insurance. *Butner v. Spease,* 217 N. C., 82, 6 S. E. (2d), 808. True, there is allegation that plaintiff was induced to decline payment of the policy by the careless misrepresentations of the Bank, nevertheless the plaintiff's refusal to pay was the result of its own voluntary election, "acting with an independent mind." *Bearden v. Bank of Italy,* 57 Cal. App., 377, 207 Pac., 270.

The definition of proximate cause requires a continuous and unbroken sequence of events, and where the original wrong only becomes injurious in consequence of the intervention of some distinct wrongful act or omission on the part of another or others, the injury is to be imputed to the second wrong as the proximate cause, and not to the first or more remote cause. Cooley on Torts, sec. 50; *Butner v. Spease, supra.*

The rule is, that if the original act be wrongful, and would naturally prove injurious to some other person or persons, and does actually result in injury through the intervention of other causes which are not in themselves wrongful, the injury is to be referred to the wrongful cause, passing by those which are innocent. *Scott v. Shepherd,* 2 Bl., 892 (*Squib Case*). But if the chain of causation be broken by the intervention of some efficient, independent cause, such intervening cause is to be regarded as the proximate cause of the injury, and in an action against the original wrongdoer the law will not undertake further to pursue the question or resulting damage. *McGhee v. R. R.,* 147 N. C., 142, 60 S. E., 912, 24 L. R. A. (N. S.), 119. *"In jure non remota causa sed proxima spectatur.* It were infinite for the law to judge the cause of causes, and their impulsions one of another; therefore it contenteth it selfe with the immediate cause, and judgeth of acts by that, without looking to any further degree." Bacon's Maxims, I; *Newell v. Darnell,* 209 N. C., 254, 183 S. E., 374. To avail the original wrongdoer as a defense, however, the intervening cause must be both independent and responsible of itself. *Harton v. Tel. Co.,* 146 N. C., 429, 59 S. E., 1022; *Watters v. City of Waterloo,* 126 Iowa, 199, 101 N. W., 871.

In searching for the proximate cause of an event, the question always is: Was there an unbroken connection between the wrongful act and the injury, a continuous operation? Do the facts constitute a continuous

succession of events, so linked together as to make a natural whole, or was there some new and independent cause intervening between the wrong and the injury? *Milwaukee and St. P. Ry. Co. v. Kellogg,* 94 U. S., 469, 24 L. Ed., 256. Many causes and effects may intervene between the original wrong and the final consequence, and if they might reasonably have been foreseen, the last result, as well as the first and every immediate consequence, is to be considered in law as the proximate cause of the original wrong. But when a new cause intervenes, which is not itself a consequence of the first wrongful cause, nor under the control of the original wrongdoer, nor foreseeable by him in the exercise of reasonable prevision, and except for which the final injurious consequence would not have happened, then such injurious consequence must be deemed too remote to constitute the basis of a cause of action against the original wrongdoer. *McGhee v. R. R., supra; Ramsbottom v. R. R.,* 138 N. C., 38, 50 S. E., 448.

Here, the causal connection between the Bank's negligence and the plaintiff's ultimate loss was broken by an independent and responsible cause. The damages claimed are in no legal sense the proximate cause of the negligence alleged. "There was an interruption and the intervention of an entirely separate cause, which cause was an independent human agency, acting with an independent mind." *Hartford v. All Day and All Night Bank,* 170 Cal., 538, 150 Pac., 356, L. R. A. 1916-A, 1220. The damages alleged are too remote. *Bowers v. R. R.,* 144 N. C., 684, 57 S. E., 453, 12 L. R. A. (N. S.), 446; 62 C. J., 1115.

It results, therefore, that the demurrer was properly sustained on both causes of action.

Affirmed.