IN THE MATTER OF THE WILL OF ALICE WEAVER TURNER, DECEASED

No. COA06-1105

(Filed 19 June 2007)

**Wills— caveat—check from attorney's trust account for bond**

The trial court erred by granting propounder's motion to dismiss a caveat filed by caveator to the pertinent will based on the use of a check drawn on an attorney's trust account to satisfy the bond requirement under N.C.G.S. § 31-33, because: (1) a personal check drawn on an attorney's trust account constitutes money or bond for the purposes of N.C.G.S. § 31-33; (2) the check was drawn on an in-state account; (3) the check was not simply held, but was cashed in the normal course of business within a few days of its being presented; and (4) the check was not a personal check but rather drawn on an attorney's trust account, which is subject to additional regulations entirely separate from those promulgated by financial institutions thus providing sufficient indicia of reliability.

Appeal by caveator from an order entered 25 May 2006 by Judge Zoro J. Guice, Jr. in Haywood County Superior Court. Heard in the Court of Appeals 21 March 2007.

*J. E. Thornton, P.A., by Jack E. Thornton, Jr., for caveator-appellant Baptist Children's Homes of North Carolina, Inc.*

*Smith Moore LLP, by Sidney S. Eagles, Jr., James G. Exum, Jr. and Allison O. Van Laningham; Law Offices of E.K. Morley, PLLC, by E.K. Morley, for propounder-appellee Marsha Case-Young.*

HUNTER, Judge.

Caveator-appellant Baptist Children's Homes of North Carolina, Inc. ("caveator"), appeals from a superior court order granting a motion by propounder-appellee Marsha Case-Young ("propounder") to dismiss the caveat filed by caveator to the will of Alice Weaver Turner ("Turner"). After careful review, we reverse.

Turner died on 25 July 2002, and on 29 July 2002 a last will and testament dated 4 October 2000 ("2000 will") was accepted for probate by the clerk of court in Haywood County. Also on 29 July 2002, Letters Testamentary were issued to propounder, named as executrix and sole beneficiary under the will. The 2000 will revoked all former wills, including one Turner had executed on 9 February 1999 leaving property to a variety of beneficiaries, including propounder.

On Thursday, 28 July 2005, just inside the three-year statute of limitations deadline, caveator filed a Caveat to the 2000 will accepted for probate. Because N.C. Gen. Stat. § 31-33 (2005) requires a $200.00 bond to be filed with a Caveat, on the same day caveator submitted to the clerk of court a $200.00 check drawn on the trust account of a local law firm. Three business days later, on Tuesday, 2 August 2005, the clerk deposited the check, which was accepted by the bank.

Caveator served propounder with a copy of the Caveat on 28 November 2005. On 20 December 2005, propounder moved to dismiss the Caveat pursuant to Rules 12(b) and 41(a) of the North Carolina Rules of Civil Procedure; that motion was granted on 23 May 2006, and caveator appeals.

N.C. Gen. Stat. § 31-33 (2005) states in pertinent part:

> When a caveator shall have given bond with surety approved by the clerk, in the sum of two hundred dollars ($200.00), payable to the propounder of the will, . . . or when a caveator shall have deposited money or given a mortgage in lieu of such bond . . . , the clerk shall transfer the cause to the superior court for trial.

Resolution of this appeal turns on whether a personal check drawn on an attorney's trust account constitutes either "money" or "bond" for the purposes of this statute. If it can be considered neither, caveator failed to meet the statutory requirements for filing a Caveat within the three-year statute of limitations period.

Both parties agree that the sole case on point in our state jurisprudence is *In re Will of Winborne*, 231 N.C. 463, 57 S.E.2d 795

(1950), which concerns precisely the same statute and deposit requirement. In *Winborne,* the caveators submitted a check drawn on an out-of-state bank that was simply held by the clerk of court rather than cashed. The Court held that "[a] check deposited with the clerk is not a bond, and it does not constitute cash deposited in lieu of bond within the meaning of the statute." *Id.* at 465, 57 S.E.2d at 797. The Court opined that:

> A check is nothing more than a bill of exchange drawn on a bank, . … and it does not operate as an assignment of any part of the funds to the credit of a drawer with the bank until it is presented to and accepted by the bank on which it is drawn. . . . The drawer is at all times, prior to acceptance by the bank, at liberty to stop payment or to withdraw his funds from the bank. *Thus the check secures no one.*

*Id.* at 465, 57 S.E.2d at 797-98 (emphasis added).

The case and statutes relied on and the facts emphasized by the Court in *Winborne* make evident the Court's primary concern: The check at issue lacked indicia of security and reliability. First, the Court noted, both the bank on which the check was drawn and the caveator's home were located in another state, meaning that the caveator could have stopped payment on the check and retreated to his home state, leaving the propounders without recourse; in addition, the record contained no evidence that the account contained funds sufficient to cover the check. *Id.* at 465, 57 S.E.2d at 798. The Court then cited to a case and two statutes describing a check as essentially a formalized IOU and stating that the bank against which it is drawn bears no liability for funds until the check is presented to and accepted by the bank. *See Insurance Co. v. Stadiem,* 223 N.C. 49, 52, 25 S.E.2d 202, 205 (1943) ("a check of itself does not operate as an assignment of any part of the funds to the credit of the drawer with the bank, and the bank is not liable to the holder unless and until it accepts or certifies the check").

Caveator argues that the case at hand is distinguishable from *Winborne*: Here, the check was drawn on an in-state account; it was not simply held but was cashed in the normal course of business within a few days of its being presented; and it was not a personal check, but rather drawn on an attorney's trust account. Caveator argues that these circumstances constitute indicia of reliability that distinguish the situation here from that in *Winborne.* We agree.

**IN RE WILL OF TURNER**

[184 N.C. App. 173 (2007)]

The most compelling distinction is the type of account on which the check was drawn: An attorney's trust account, not a personal account. As stated, the Court's concern in *Winborne* was that the caveator's personal check was unreliable and "secure[d] no one," because the Court could easily be deprived of methods for ensuring that the check was not somehow invalidated. *Winborne*, 231 N.C. at 465, 57 S.E.2d at 798. Unlike personal checks, checks written on attorneys' trust accounts are subject to additional regulations entirely separate from those promulgated by financial institutions: The ethical rules and enforcement mechanisms of the North Carolina State Bar. Rule 1.15-2(k) of the Rules of Professional Conduct for attorneys licensed to practice in North Carolina states: "Every lawyer maintaining a trust account or fiduciary account at a bank shall file with the bank a written directive requiring the bank to report to the executive director of the North Carolina State Bar when an instrument drawn on the account is presented for payment against insufficient funds." Rev. R. Prof. Conduct N.C. St. B. 1.15-2(k), 2007 Ann. R. (N.C.) 717, 781. The Attorney's Trust Account Handbook produced by the State Bar handout states: "If a trust account check is dishonored, the lawyer should immediately ascertain the nature of the problem and promptly correct it, even if this requires a deposit of the lawyer's own funds." N.C. State Bar Attorney's Trust Account Handbook at 10 (Rev. 3/2005). When this occurs, if "no adequate explanation is immediately forthcoming [from the attorney to the Bar], a grievance file will be established and a formal investigation initiated." *Id.* These regulations and enforcement mechanisms give checks written on attorneys' trust accounts an added layer of security that personal checks do not have.

Because of this security, checks written on attorneys' trust accounts have more in common with certified checks than personal checks, and certified checks are frequently equated by state statute with cash money. For example, a statute requiring bonds for upset bids on real property uses the language "a deposit in cash or by certified check or cashier's check satisfactory to the clerk[.]" N.C. Gen. Stat. § 1-339.25(a) (2005). N.C. Gen. Stat. § 25-3-310 (2005) further elucidates the effect of various types of checks on obligations: A certified check taken for an obligation discharges the obligation to the same extent as an equivalent amount of cash money; an uncertified check taken for an obligation suspends the obligation in that amount until the check is dishonored, paid, or certified. These qualities are perhaps why clerks of court generally do not accept personal checks, but do regularly accept checks drawn on attorney trust funds.

**IN RE A.J.H-R. & K.M.H-R.**

[184 N.C. App. 177 (2007)]

Because the check in this case bore indicia of reliability and an added layer of security not present in *Winborne*, including the fact the trust account check was deposited, negotiated, and paid, and because state statutes support a classification of an attorney's trust account check in this case different from the uncashed out-of-state personal check in *Winborne*, we reverse the trial court.

Reversed.

Judges TYSON and JACKSON concur.