No. 15,056.

HENDERSON *v.* GREELEY NATIONAL BANK.
(142 P. [2d] 480)

Decided September 13, 1943.   Rehearing denied November 1, 1943.

Mr. John S. Stidger, for plaintiff in error.

Mr. Hubert D. Waldo, Mr. Donald C. McCreery, for defendant in error.

*En Banc.*

Mr. Justice Hilliard delivered the opinion of the court.

AN action by a depositor to recover from a bank damages in a sum equal to that portion of his deposits disbursed by the bank allegedly without authority and in violation of an oral trust agreement in relation thereto. Proceeding on the bank's demurrer set forth in its answer to the amended complaint, considered as a motion to dismiss under the Colorado Rules of Civil Procedure, the court entered judgment of dismissal of the cause, with costs. Other questions will have attention as we proceed, but since the sufficiency of plaintiff's allegations is a major inquiry on error, examination of the amended complaint will be our initial consideration.

We think the amended complaint states a cause of action. The gravamen is, that June 16, 1936, plaintiff, wishing to prevent his then wife from drawing checks on his account, withdrew from defendant bank his deposit in the considerable sum appearing, upon which his wife had theretofore been by him authorized to draw checks, and by agreement with the cashier of the bank he opened a new account to which his wife could not resort. In the new account he deposited the sum of $2,749.82, and for the balance of fifteen thousand dollars of the withdrawal, he took defendant's cashier checks, two for $5,000 each and two for $2,500 each. At the time of the changing of his account, plaintiff explained to the cashier that he was about to leave for California, and, to enable one Messick—who, in plaintiff's absence was authorized to purchase livestock for him—to make such purchases, he would leave with said Messick "signed checks" with which to accomplish the purpose indicated; that in addition to plaintiff's signature on said checks, they were to be marked with an "x" and bear notation on the lower left-hand corner of "the number of head of livestock and the kind" of the purchases, and only checks so marked and identified were to be paid by the bank and charged to plaintiff's account.

In furtherance of plaintiff's plans to prosecute his

business during his absence, and that his account should not be overdrawn, he endorsed the several cashier checks and left them with defendant's cashier, with instructions to deposit them in his newly opened account from time to time, of and when necessity arose through the payment of checks issued conformably to the instructions stated. It was especially agreed between plaintiff and the cashier of the bank, however, "that the sole purpose of handling plaintiff's account with the bank in the above manner was to prevent the then wife of this plaintiff from securing plaintiff's money so held and deposited with the defendant," and particularly, that no check "made payable to the then wife of this plaintiff or any check which, by endorsement thereon, plainly showed that the said wife of this plaintiff was securing the proceeds," was to be paid. Plaintiff further alleged that notwithstanding said agreement between himself and defendant bank, the latter not only paid checks, made out to various persons, marked with an "X" and bearing the specified notation in the lower left-hand corner thereof, but also paid four checks marked with an "X," but without the required notation indicating that they were issued in payment of livestock, in a sum aggregating $9,525, the items thereof being as follows: June 22, 1936, $2,025, June 25, 1936, $1,500, June 30, 1936, $2,645, and July 2, 1936, $3,355. That in accomplishing payment of the foregoing unauthorized checks, together with checks that did bear the agreed identification marks, defendant's cashier deposited the above mentioned cashier's checks to plaintiff's credit as follows: June 30, 1936, $2,500, July 2, 1936, $2,500, July 3, 1936, $5,000, and July 6, 1936, $5,000. That by reason of the foregoing, plaintiff's wife became possessed of the sum stated, to plaintiff's damage in the amount thereof.

While the agreement between plaintiff and defendant bank may be unusual, nevertheless, as we think, it was lawful, understandable and capable of observance. The

bank was in control of the situation. It not only paid checks bearing necessary notation identification, but it paid others, endorsements upon which indicated that the proceeds thereof were to go to the one person who in no event was to receive any of such funds, and in consummation of this forbidden act, it deposited to the credit of plaintiff's account his cashier checks entrusted to its care. This is not a situation where from a deposit balance made directly by the depositor, a careless or nonobservant bank teller paid checks lacking in some of the requirements of signature or other safeguards, however that might be regarded in relation to the bank's liability, but is one where a responsible official of the bank involved, proceeding in circumstances admitting of pause and reflection, made the foray possible by the deposit of plaintiff's cashier checks entrusted to the bank, to the credit of his checking account, contrary to, and in violation of, the plain terms of an agreement which he made for the bank with plaintiff. That Messick was faithless and issued checks in the large sums appearing, in the interest of plaintiff's wife, is not an answer to the bank's failure to observe its compact with plaintiff. The checks through which plaintiff's funds were diverted to the proscribed individual did not bear notation indicative of their purpose, an essential requirement of which the bank had knowledge. That Messick came under the spell of a woman is not the first known instance of the kind; but even Messick did not falsify as to the purpose of the checks—he did not recite that they were for the "purchase of livestock." Evidently, he was not equal to saying nay to the woman, but he did omit to attach to the checks through which the woman illegally became possessed of the funds in question, the notation necessary to their adequacy. That omission operated to bring the bank's agreement with plaintiff into play and controlling importance.

The circumstances considered, we cannot think the bank exercised the care required. Plaintiff made

the arrangement upon which is his reliance with the cashier of the bank, who, having "greater inherent powers than any other officer of the corporation, * * * is generally the active financial agent and manager of the bank. He is endowed with full power to transact all usual and general business of the bank." *First Nat. Bank v. Wich,* 62 Colo. 119, 160 Pac. 1036. "As a deposit is a matter of contract between depositor and bank, the depositor may stipulate at the time of deposit as to how or by whom * * * the money may be drawn out; * * *. The signature upon which a depositor is to be bound and the bank is to be authorized to disburse his money and charge his account therefor may be whatever they agree upon. The bank must, however, in paying out a deposit, comply with its agreement with the depositor." 7 Am. Jur., p. 360, §506. "Where money is specially deposited to be paid on a condition imposed for the depositor's benefit, the bank has no right to pay any part of such money on the depositor's check until the condition is complied with." 9 C.J.S., p. 678, §333. "The contract between the bank and the depositor is that it will pay out his money only upon and in accordance with his express direction." *Western Union Tel. Co. v. Bi-Metallic Bank,* 17 Colo. App. 229, 68 Pac. 115.

■ It promotes thought to record, that, even where a signature to a check is correct, and all other required indicia appear thereon, still, in this jurisdiction the bank on which a check is drawn is not liable in action to the drawee thereof, and in all legal grace may decline payment of the check. *United States Portland Cement Co. v. U. S. National Bank,* 61 Colo. 334, 157 Pac. 202; *Van Buskirk v. State Bank,* 35 Colo. 142, 83 Pac. 778; *Boettcher v. Colo. Nat. Bank,* 15 Colo. 16, 24 Pac. 582. See, '35 C.S.A., c. 112, §189. Plaintiff's allegations considered, we think the bank was derelict in three definite particulars: (1) The checks involved did not bear the agreed indicia; (2) also, had the required indicia appeared, still, the checks indicated that the proceeds were

to go to plaintiff's wife, contrary to the express understanding relative to the matter; (3) the employment of plaintiff's cashier checks to the end appearing, was violative of the purpose of the bank's stewardship. Besides, considering the bank's duty to its depositor—it owed no duty to others in the premises—the allegations reveal generally that which should have caused the bank to make use of its right to refuse payment of the checks in any event. In all fairness, the bank should answer at trial.

By first answer defendant submitted admissions, denials and explanations, to which plaintiff interposed replication. Within the scope of the amended complaint, the case is at issue.

Defendant's second answer is the demurrer of which we have made disposition; and its tenth answer presents the same challenge by motion.

██ Its third answer is that the contract alleged by plaintiff, not said to be in writing, "is void under and by virtue of section 18, chapter 71, '35 C.S.A. That section reads: "Every grant or assignment of any existing trust in lands, goods or things in action, unless the same shall be in writing subscribed by the party making the same, or by his agent lawfully authorized, shall be void." We have not been favored with authority to the effect advanced by defendant, and our conviction is that the statute mentioned is without application.

Its fourth answer is fully comprehended in its first answer and need not further be examined.

Its fifth answer, of which its sixth answer is part and parcel, and is considered with it, is to the effect that in a certain divorce action against plaintiff by the wife who had secured his funds in the manner and sum stated, and which she then had in a safety deposit box in another bank, the court ordered " * * * that in order to properly enable her to defend this action, the plaintiff shall be allowed to use, pending the trial of the action, for her attorney's fees, suit moneys and support money,

the sum of not to exceed $2,000.00 out of the funds" mentioned, and that plaintiff here was present and participated in said proceedings, hence, as claimed, defendant here, if liable at all, should have credit for the two thousand dollars. We are persuaded otherwise. That order was challenged on error, and in *Henderson v. Henderson,* 104 Colo. 325, 90 P. (2d) 968, we held that the order was not warranted, and in recognition of our determination, the trial court subsequently adjudged that plaintiff was entitled to have judgment against his wife in the full sum of nine thousand, five hundred and twenty-five dollars, obtained by her from plaintiff's bank account, as previously stated, which included the two thousand dollars. It does not lie with the bank, as we think, to claim credit for the two thousand dollars which the wife sought by court order to take unto herself, but in which effort she failed. If the bank is legally liable for the money plaintiff's wife secured in the manner appearing, court orders by the trial judge in relation to money in *Henderson v. Henderson, supra,* reversed by us, may not be availed of as a credit to the bank.

By its seventh answer, defendant pleaded that pursuant to our direction in the Henderson divorce case judgment entered in plaintiff's favor against his wife in the sum of $10,525, made up of the $9,525 drawn from defendant bank in manner already stated, and $1,000 support and expense money paid by plaintiff to his wife pursuant to another trial order in the course of that case, and which we held should be repaid to him; and that on execution there his wife's property was sold for the sum of $5,010, which sum, as contended by plaintiff, should be credited on the claim made against the bank here. We think the sum of the execution sale there should be considered as allowed on that judgment as a whole, and not on that part of the judgment based on the alleged unauthorized withdrawals from the bank. In other words, whatever the judgment entered against the bank here, if any, and subject to interest computa-

tions as to the entire problem, it should enjoy credit in the sum of $4,010.

In its eighth answer, defendant pleads that plaintiff endeavored to redeem from his own execution sale of his wife's property, and in that regard became engaged in litigation with a third party, also claiming to be a creditor, as to which should enjoy the right of redemption. The sum of the result, as alleged, was that the district court had adjudged against plaintiff and in favor of his adversary in the matter, in relation to which, as further alleged, the case had been prosecuted here on error. The suggestion was that trial be withheld until decision on that writ had been announced, the thought advanced being that should plaintiff here prevail there, his judgment against his wife would stand satisfied in full, and hence, further, his claim here would be without basis. Whether the trial court permitted any delay on account of the stated contention is not of moment. The writ of error in the "redemption controversy" was resolved here in favor of the other creditor by an evenly divided court, or against plaintiff, that is to say, he was denied the right to make redemption. See, *Henderson v. Anderson,* 108 Colo. 529, 120 P. (2d) 195.

In its ninth answer, defendant, first adopting pertinent allegations of its eighth answer, alleged that the bid of plaintiff at the execution sale of his wife's property on the judgment he had against her, "was grossly inadequate," etc.; hence, as urged, had he bid what the property reasonably was worth, he would have realized in full the judgment in which the alleged claim against the bank entered, and both he and the bank would have been saved from loss. We regard the suggestions of this answer as of things remote and speculative, and not within the realm of any defense which defendant may urge. The sale was publicly conducted by the sheriff of the county, and no irregularities in relation thereto were alleged. The bank itself, its premise of value of the wife's property assumed, safely could have bid that

which would have saved it from possibility of loss. Had the district court there decided that plaintiff here, rather than another creditor, might redeem from that sale, as resulted, the same divided court would have worked affirmance of that judgment, and a different picture would have confronted all concerned.

We conclude that the judgment should be reversed and the case remanded for trial. The trial should be upon issues resulting from the allegations of the amended complaint, the first answer thereto and the replication to that answer. If plaintiff prevails, he should be given judgment in a sum resulting from our disposition of the bank's seventh answer, with costs; if defendant is successful, it should have judgment for costs. Let it be ordered accordingly.