No. 17,542.

HARSIN MOTOR CO. *v.* THE COLORADO SAVINGS & TRUST
CO., ET AL.
(284 P. [2d] 235)

Decided May 31, 1955.

Messrs. THULEMEYER & STEWART, for plaintiff in error.

Mr. CLYDE T. DAVIS, Mr. CHARLES E. SABIN, for defendant in error The Colorado Savings & Trust Co.

No appearance for defendant in error Zipprodt Finance Company.

*En Banc.*

MR. JUSTICE KNAUSS delivered the opinion of the Court.

IN the trial court plaintiff in error was plaintiff, and

will be referred to as plaintiff, or as Harsin. Defendant in error, the Colorado Savings & Trust Company, defendant in the trial court, will be referred to as Bank; and the third-party defendant, A. M. Zipprodt, doing business as Zipprodt Finance Company, will be referred to as Zipprodt.

Plaintiff, Harsin, in its complaint alleged that it drew a check dated December 19, 1952, on the Bank payable to "Barnes Used Cars" in the sum of $1,350; that the Bank paid said check on a forged indorsement; that Harsin made demand on the Bank for repayment and was refused. Defendant Bank filed a third-party complaint alleging that the last indorsement on said check was that of Zipprodt; that the Bank demanded payment from Zipprodt and was refused, and the Bank prayed judgment against Zipprodt for all sums that might be adjudged in favor of Harsin against the Bank. By its answer the Bank alleged that the indorsement of said check was not forged, "but was made by a person duly authorized to make the same both by the payee and by the plaintiff." Zipprodt filed his answer alleging the check was issued in payment for the purchase of an automobile which was delivered to Harsin and that the payee named in said check "Barnes Used Cars" is a nonexistent and fictitious payee, making no claim to the proceeds of said check. Zipprodt admitted he had made the last indorsement on the check.

Trial was to the court. At the conclusion of Harsin's evidence, the trial judge granted motions of the Bank and Zipprodt to dismiss the action and from the judgments of dismissal Harsin brings the cause here by writ of error. Zipprodt has not entered an appearance in this court.

Harsin has not presented a reporter's transcript of the evidence, but relies entirely on the rather complete findings of the trial judge, and urges for reversal the conclusion of law that there is no forged indorsement on the check.

The findings of the trial court are as follows: James H. Rickerson, hereafter referred to as Rickerson, offered to sell Harsin a 1951 Chevrolet automobile, advising Harsin the title to said car was in the name of "Barnes Used Cars"; that the certificate of title was in the possession of Zipprodt. Harsin, before completing the purchase, telephoned C. J. Hartman, manager of Zipprodt Finance Company, third-party defendant, and verified that Zipprodt held the certificate of title to the 1951 Chevrolet automobile. Harsin, desiring to make payment to the owner of the car, executed his check for $1,350, payable to Barnes Used Cars, though Rickerson had asked Harsin to make him the payee, which Harsin declined to do. It appears at that time Rickerson owed Zipprodt approximately $500 and that Zipprodt was holding à certificate of title to this automobile. Zipprodt had no chattel mortgage on the car. Rickerson took Harsin's check to Zipprodt and indorsed it in the presence of an employee of Zipprodt's, as follows: "Barnes Used Cars—Charles Barnes—James H. Rickerson."

The trial court found that at the time the employee of Zipprodt believed that Charles Barnes, a used car dealer in Ordway, Colorado, "had authorized such indorsement, or did not object thereto." Rickerson delivered the check to Zipprodt, who deposited the check in defendant Bank; retained $500 and gave Rickerson the balance of $850. C. J. Hartman, manager of Zipprodt's, notarized the signature of "Barney's Used Cars, Charles Barnes" on the assignment of the certificate of title to the car without seeing who executed the instrument, and later mailed the certificate to Harsin. It is conceded that Charles Barnes of Ordway, who did business as "Barney's Used Cars," was not associated with Rickerson; did not sign the certificate of title; had no interest in Rickerson, the automobile, or the check. It was later ascertained that the 1951 Chevrolet automobile had been stolen and it was repossessed by the rightful owner, whereupon Harsin informed the Bank that its indorse-

ment on the check "Barnes Used Cars—Charles Barnes" was a forgery and demanded that the Bank credit Harsin's account with $1,350. This the Bank did, but later withdrew the credit given Harsin.

It appears from the findings that the certificate of title held by Zipprodt was spurious. A transfer of this certificate of title from one Gilbert Sandoval to a wrecking yard in November, 1952, was notarized by Hartman; the transfer from the wrecking yard to Barney's Used cars in December, 1952, was notarized by said Hartman, as was the transfer in 1953 from Barney's Used Cars to Harsin.

The trial court's conclusions of law include the following: "* * * if the defendant is held liable to the plaintiff for the amount of this check without further evidence being introduced to controvert the testimony now in the record, the defendant should be able to recover from the third-party defendant on the ground that the third-party defendant endorsed the check when it was negotiated to and deposited in defendant, Colorado Savings and Trust Company.

"James H. Rickerson obtained the check from Harsin Motor Company through Rickerson's fraudulent misrepresentation that he could produce a good title to the Chevrolet automobile. He did, in fact, cause to be produced and delivered to the plaintiff, a title to the automobile, even though he used the name 'Barnes Used Cars' on the check which was his own assumed name, it appearing that the reason for the use of this name was an attempt to deal in used cars without a license in violation of the statute, and escape detection, by appropriating the name of Charles Barnes 'Barney's Used Cars,' an authorized dealership, on the car title." * * *

"The fraud practiced by Rickerson was practiced on both plaintiff and third-party defendant alike. The defendant was completely unaware and had no reason to be aware of Rickerson's chicanery.

"In view of the fact that the plaintiff gave the check

in payment for the title of an automobile, which title it actually received from the then-holder of the certificate of title, the endorsement by James H. Rickerson—even though he assumed a name of 'Barnes Used Cars—Charles Barnes' leads to the conclusion that his endorsement of the check was not a forgery and was—so far as the title to the check was concerned—a sufficient indorsement."

"It is fundamental that a bank may not charge to the account of its depositor a check paid on the basis of a forged indorsement. *Scalva v. Miners' & Merchants Bank of Ouray*, 64 Colo. 185, 171 Pac. 752. The contract between the bank and the depositor is that it will pay out of the depositor's money only upon and in accordance with his express direction. *Western Union Tel. Co. v. The Bi-Metallic Bank*, 17 C.A. 229, 68 Pac. 115; *Henderson v. Greeley National Bank*, 111 Colo. 365, 142 P. (2d) 480.

"The indorsement of a check payable to a fictitious payee but one to whom the drawee did not intend payment to be made, is a forgery. * * *

"But where one represents himself to be the agent of a fictitious person and fraudulently procures the delivery to himself of a check payable to the order of such fictitious person as payee, and secures the payment of the check to himself by indorsing the name of the fictitious payee upon it, in the absence of estoppel or negligence on the part of the drawer, the loss, as between the drawer and the bank upon which it is drawn, must be borne by the latter." *Peter McCormack et ux. v. Central State Bank*, 203 Ia. 833, 211 N.W. 542.

Under this record it cannot be doubted that Rickerson was an imposter. How deeply Hartman, manager of Zipprodt was involved in this transaction is a matter of conjecture at this stage of the case. It will be noted that the check was payable to Barnes Used Cars, and was indorsed by Rickerson. The name of the used car dealer at Ordway was Barney's Used Cars. The

pertinent rule fixing liability of the defendant Bank and supported by the overwhelming weight of authority is aptly stated in 7 A. J. section 600, p. 436, as follows:

"A distinction which has been drawn and generally accepted is that between the case where a check is delivered directly to an imposter as payee, and the case in which the check is delivered to an imposter upon the representation and in the belief that he is the agent of the person named as payee, even though the latter is a fictitious or nonexistent person, or at least a person who has no connection with the transaction; in the latter case, as between the drawer and the drawee, the loss— at least in the absence of conduct estopping the drawer of negligence upon his part — falls upon the drawee, where the imposter upon whose indorsement the paper was paid represented himself to be the agent of the payee and not the payee himself."

In 9 C.J.S. p. 743, the rule is stated:

" * * * where the imposter, on whose indorsement the check is paid, obtains the same from the drawer by representing himself to be the agent of the payee, and not the payee himself, such indorsement is a forgery, and payment by the drawee is unauthorized."

We conclude the trial court erred in sustaining the motions to dismiss at the conclusion of plaintiff's case. The cause is remanded with direction to vacate the judgments of dismissal and proceed with the trial of this cause in harmony with this opinion.