NATIONWIDE HOMES OF RALEIGH, N. C., INC. v. FIRST-CITIZENS BANK AND TRUST COMPANY.

(Filed 20 May, 1964.)

**1. Banks and Banking § 10—**

Where a bank admits the deposit of funds the burden is on the bank to show satisfaction of the debt so created.

**2. Principal and Agent § 5—**

A party relying upon the authority of an agent to act for his principal must ascertain the extent of such agent's authority, but the principal is liable not only for acts expressly authorized but also for acts within the

NATIONWIDE HOMES *v.* TRUST CO.

apparent scope of the authority with which the principal has clothed the agent. G.S. 55-36(e).

**3. Banks and Banking § 10—**

An agent making a deposit does not have implied authority to draw checks on the account.

**4. Same—**

Where a bank admits deposits and disbursements of the funds on checks drawn by the agent who made the deposits but offers no evidence of valid authority of the agent to draw checks on the account or of apparent authority of the agent by showing when the depositor first had notice of the payment of checks drawn by the agent so as to establish the depositor's failure to object within a reasonable time thereafter, nonsuit in the depositor's action against the bank is error.

**5. Same.**

G.S. 53-52 entitles a bank to credit for forged or unauthorized withdrawals by an agent of the depositor only for those checks received by the depositor in its bank statement for more than sixty days without giving notice to the bank that the withdrawals were not authorized.

APPEAL from *Olive, Emergency J.,* First November Regular Civil Session 1963 WAKE.

Plaintiff seeks to recover $8,663.69 wrongfully charged to its account. It alleges these charges were made on checks signed in its name by its agent, S. T. Currin, Jr., who was without authority to draw on funds deposited in plaintiff's name.

Defendant denied liability. It alleged: Currin was in full and complete charge of all of plaintiff's business in the Raleigh area. He had implied and apparent, if not actual, authority to draw checks on plaintiff's account. Plaintiff negligently failed to notify it that Currin was not authorized to draw checks on its account when it knew, or should have known, that he was doing so. It pleaded the provisions of G.S. 53-52 and a lapse of 60 days between the return of the checks and plaintiff's claim of forgery.

At the conclusion of plaintiff's evidence defendant's motion for nonsuit was allowed. Plaintiff excepted and appealed.

*Yarborough, Blanchard & Tucker for plaintiff.*
*Mordecai, Mills and Parker for defendant.*

RODMAN, J.  Viewed in the light most favorable to plaintiff, the evidence is sufficient to establish these facts: Prior to August 7, 1961, plaintiff had no deposit with defendant. On that date S. T. Currin, Jr., plaintiff's agent, deposited with defendant $2,000. The deposit was

made in plaintiff's name. The funds deposited were plaintiff's. When the account was opened, Currin delivered to defendant a document ·captioned · "AUTHORIZING RESOLUTION" which stated plaintiff's Board of Directors, on August 1, 1961, adopted a resolution authorizing S. T. Currin, Jr., its Vice-President, "to sign checks against funds of the corporation in First Citizens Bank & Trust Company." The document was signed by S. T. Currin, Jr. who affixed after his name the title "Vice-President." It purported to be signed by George Coleman, having the title of Secretary. Coleman was plaintiff's secretary, but his name purporting to certify the adoption of the resolution was a forgery. Currin from time to time made deposits to plaintiff's credit. The aggregate of the deposits between August 7, 1961 and December 20, 1961 was $13,956.45. Checks drawn by Currin on the account reduced it to $60.93 on December 28, 1961. Checks aggregating $5,292.76 drawn by Currin and charged to the account were for "the ultimate benefit of plaintiff." On February 22, 1962 the account had been reduced to thirty eight cents. Plaintiff first discovered that Currin had made deposits with, and drawn checks on, plaintiff's account the latter part of December 1961. Plaintiff then notified defendant that Currin had no authority to deposit or draw checks. The parties stipulated: "All checks drawn on the subject account are forgeries committed by S. T. Currin, Jr. and are not checks or drafts of plaintiff."

The admission that funds were deposited with defendant in plaintiff's name placed the burden on it to show payment of the debt so created. *Schwabenton v. Bank,* 251 N.C. 655, 111 S.E. 2d 856; *Finance Company v. McDonald,* 249 N.C. 72, 105 S.E. 2d 193; *Joyce v. Sell,* 233 N.C. 585, 64 S.E. 2d 837; *Arnold v. Trust Company,* 218 N.C. 433, 11 S.E. 2d 307; *Boney v. Bank,* 190 N.C. 863, 129 S.E. 583; *Bank v. Thompson,* 174 N.C. 349, 93 S.E. 849; *Yarborough v. Trust Company,* 142 N.C. 377, 55 S.E. 296.

One who deals with an agent must, to protect himself, ascertain the extent of the agent's authority. *Edgewood Knoll Apartments v. Braswell,* 239 N.C. 560, 80 S.E. 2d 653. The principal is of course bound when he expressly authorizes his agent to act. Here the stipulation that Currin forged the checks negates express authority to draw on the bank account; but a principal may be bound even though the agent has not been expressly authorized to act if the nature and extent of his duties fairly implies the authority to act; if the principal has invested the agent with the apparent authority to act he will be bound. G.S. 55-36(e); Robinson's North Carolina Corporation Law & Practice, p. 274.

The mere fact that an agent makes deposits to the credit of his principal is not of itself sufficient to imply authority to draw checks on the

account. *Boney v. Bank, supra; Pelican Well, Tool & Supply Company v. Sabine State Bank & Trust Company,* 138 So. 161; *Brown v. Daugherty,* 120 Fed. 526; 1 Morse on Banks and Banking, (6 Ed.) 723-4.

Defendant alleged, as justification for paying the checks, the fact that Currin had full and complete charge of plaintiff's affairs in the Raleigh area. Plaintiff alleged that Currin was not in fact its vice-president. It describes him as "an employee." No evidence was offered with respect to the kind of business which the plaintiff did, the scope of the business, the necessity for a bank account, Currin's title, if any, or the duties which he was to perform.

The descriptive words "employee" or "agent" are not, standing alone, sufficient to establish implied or apparent authority to draw checks on their employer's bank account. *Goodloe v. Bank,* 183 N.C. 315, 111 S.E. 516. The authority of a general agent is broader. *Lumber Company v. Elias,* 199 N.C. 103, 154 S.E. 54; *Strickland v. Kress,* 183 N.C. 534, 112 S.E. 30; *James H. Forbes Tea & Coffee Company v. Baltimore Bank,* 139 S.W. 2d 507; *Safeway Stores v. King Lumber Company,* 113 P. 2d 483.

Did the plaintiff lead defendants to believe Currin had authority to draw checks by failing to inform defendant when notice was brought home to it by the return of checks drawn by Currin in payment of admitted obligations of plaintiff? Defendant so alleges, but it offered no proof to support its allegation. None of the checks were in evidence. How many checks were drawn? When were they paid? When were they returned to plaintiff? There is no evidence on which to base an answer to these questions. The burden was on defendant to show plaintiff's recognition of Currin's authority to write checks.

Similarly the burden was on defendant, in order to avail itself of the provisions of G.S. 53-52, to show when the checks were returned to plaintiff. *Greensboro Ice & Fuel Company v. Security National Bank,* 210 N.C. 244, 186 S.E. 362; *Schwabenton v. Security National Bank of Greensboro, supra.* The evidence merely shows that some checks had been returned prior to December 28, 1961 when plaintiff challenged defendant's right to debit its account. Only those returned more than 60 days prior to the protest are proper credits under the statute.

The judgment of nonsuit is

Reversed.