MODERN HOMES CONSTRUCTION COMPANY AND FIREMAN'S FUND INSURANCE COMPANY, PLAINTIFFS v. TRYON BANK AND TRUST COMPANY, DEFENDANT.

(Filed 9 March 1966.)

**1. Pleadings § 4—**

The relief to which a party is entitled is determined by the facts alleged in his pleading and established by evidence, and his assertion of an untenable legal theory as the basis for his relief is immaterial.

CONSTRUCTION CO. *v.* TRUST CO.

**2. Bills and Notes § 10—**

The acceptance of an instrument operates as a promise of the drawee to pay it, G.S. 25-139, while payment is the performance of that promise, which ends the negotiable life of the instrument, and the two are fundamentally different so that the payment of a check by the drawee bank cannot operate as an acceptance and cannot be the basis of liability of the bank to the payee. G.S. 25-134, G.S. 25-139, G.S. 25-144.

**3. Banks and Banking § 10;    Bills and Notes § 14—**

The payee of a check as well as the drawer, has the right to expect the bank to pay the check in accordance with its tenor, and when the bank pays the check to an agent of the payee it is necessary to the bank's protection that it ascertain that the agent is authorized to receive payment for the payee, and the drawer has no right, as against the payee, to direct its payment to anyone else.

**4. Same—    Bank paying check to unauthorized agent may be held liable for conversion by payee.**

The evidence was to the effect that plaintiff's agent was authorized to receive cash from plaintiff's customers (under instruction to purchase a cashier's check and remit to plaintiff) but was not authorized to cash customers' checks, that a customer issued his check payable to plaintiff, identified the agent as the payee or as a representative of the payee, and requested the bank to pay the funds to the agent, and the agent endorsed the instrument in the name of plaintiff by himself as agent, and, that the bank paid the agent in cash. *Held:* The evidence is susceptible to the inference that the drawer presented the agent as a representative and not as the person doing business under the payee's name, and therefore plaintiff payee may recover of the bank upon the theory of conversion, and nonsuit was improperly entered, although the bank may challenge plaintiff's claim that it was not bound by the agent's endorsement.

**5. Trial § 21—**

Conflicting inferences make a case for the jury.

MOORE, J., not sitting.

LAKE, J., dissenting.

PLESS, J., joining in dissent.

APPEAL by plaintiffs from *Brock, J.,* May 31, 1965 Schedule C Regular Session of MECKLENBURG, docketed as Case No. 294 and argued at the Fall Term 1965.

Action by the payee of a check against the drawee-bank.

The facts in this case are not in dispute. Plaintiffs' evidence: Plaintiff Modern Homes Construction Company (Construction Company) is a Georgia corporation authorized to do business in North Carolina. In the spring of 1962, it constructed a shell home for Frank S. Moore. The contract was negotiated and the house constructed under the supervision of Ray Durham, the manager of Construction Company's Greenville, South Carolina office. At that time, Construction Company had a policy issued by plaintiff Fire-

man's Fund Insurance Company (Insurance Compnay) which insured it against loss in excess of $1,000.00 as a result of an employee's dishonesty. Durham had no authority to cash or endorse checks made payable to Construction Company. He did, however, have authority to receive cash. When an account was paid to Durham in cash, his instructions were to purchase a cashier's check from a local bank and send it immediately to Construction Company's office in Columbia, South Carolina. After the completion of the house on April 21, 1962, Durham went with Moore to defendant Bank where he introduced Durham as the representative of Construction Company, which had no account with the Bank. There, Moore drew a check upon his account, payable to Construction Company, in the amount of $3,195.00, "For 'House in full.'" Durham then endorsed the check "Modern Homes Construction Company by Ray Durham." Upon the advice and at the request of its depositor Moore, defendant Bank cashed the check for Durham in the presence of Moore. Durham absconded with the proceeds. In June 1962, Construction Company advised Insurance Company of "a potential claim" against Durham growing out of this matter. Sometime before September 27, 1962, the date on which Construction Company notified defendant Bank that it had paid the check upon an improper endorsement, Moore died. His account with defendant Bank had been closed out on May 22, 1962. Plaintiff Insurance Company, under the terms of its policy, paid plaintiff Construction Company $2,195.00 in settlement of its liability for Durham's defalcation. Defendant Bank has declined to reimburse plaintiffs.

Defendant's evidence, which amplified but did not contradict that of plaintiffs', tended to show that when Durham presented the check for payment, the assistant cashier told him that the Bank "could not cash it in that condition." Moore then said, "This man is Modern Homes Construction Company, and you cash it for me," whereupon the Bank made payment to Durham.

The factual allegations in the complaint are substantially established by the evidence. In its answer, defendant Bank admits that Moore issued the check in suit, and that it paid the check. As a further answer and defense, it pleads "the laches of Construction Company" in that, although Durham cashed the check on April 21, 1962, it made no claim on defendant "for a considerable period of time after that and this action was not instituted until October 7, 1964," at which time Moore was dead and Durham had disappeared.

At the close of all the evidence, defendant's motion for judgment as of nonsuit was allowed, and plaintiffs appealed.

*Hedrick, McKnight & Parham for plaintiff appellants.*
*Fairley, Hamrick, Hamilton & Monteith for defendant appellee.*

SHARP, J. Plaintiffs aver that they are entitled to recover from defendant on either of two theories: (1) Defendant was *negligent* in paying Durham, an unauthorized person, without ascertaining whether he had authority to endorse the check and receive the proceeds, when a proper investigation would have revealed his lack of such authority; or (2) Defendant *accepted* the check when it paid it on an unauthorized endorsement. A pleader's right to recover, however, is not determined by the theories which he formulates in the complaint; he may recover upon any theory which is supported by the facts alleged and established by evidence. *Board of Education v. Board of Education,* 259 N.C. 280, 130 S.E. 2d 408.

Plaintiffs rely upon *Dawson v. Bank,* 196 N.C. 134, 144 S.E. 833, *followed in Dawson v. Bank,* 197 N.C. 499, 150 S.E. 38. In *Dawson,* without plaintiff payees' endorsement, defendant bank paid a check to a person not authorized to receive payment. The drawers of the check, operators of a tobacco auction warehouse, had authorized the bank to pay their checks to farmers without the payees' endorsements, *i.e.,* to treat the checks as bearer instruments. The trial court nonsuited the action, and this Court reversed. Speaking through Connor, J., it said:

> "The law in this State . . . is to the effect that the payee of a check cannot maintain an action upon the check against the bank on which the check is drawn, unless and until the check has been accepted, or certified by the bank. . . .
>
> \*     \*     \*
>
> " '(He) must seek his remedy against the drawer, the bank being liable only to the drawer for its breach of promise to pay the check. . . . (T)here is no privity between the holder of the check and the bank, until by certification of the check or acceptance thereof, express or implied, or by any other act or conduct it has made itself directly liable to the holder.' " 196 N.C. at 136-37, 144 S.E. at 834.

The Court held that the act of the bank in receiving the check, presented for payment without payees' endorsement, paying it to an improper person, and subsequently charging it to the account of the drawer, amounted to an acceptance of the check which rendered it liable *ex contractu* to plaintiff payees. The result in *Dawson* was undoubtedly correct, but the rationale of the decision—acceptance —cannot be sustained. See Comments 7 N.C.L. Rev. 191 (1929);

25 Ill. L. Rev. 343 (1930); Note, 38 Yale L. J. 1143 (1929); Britton, Bills and Notes § 146 (2d Ed. 1961) (hereinafter cited as "Britton"); *Kentucky Title Savings Bank & Trust Co. v. Dunavan*, 205 Ky. 801, 266 S.W. 667; *Trucking Co. v. Bank*, 240 S.W. 1000 (Tex. Civ. App.). The acceptance of a check is the *promise* of the drawee to pay it, G.S. 25-139 (our codification of N. I. L. § 132), and, until that promise is made, no contractual relation exists between the drawee and the payee, G.S. 25-134 (N.I.L. § 127); *Insurance Co. v. Stadiem*, 223 N.C. 49, 25 S.E. 2d 202. Payment is the *performance* of that promise — the expected and intended end of the check. Acceptance prolongs the life of the check; payment ends it. Thus, the two are fundamentally different. Nor can the act of the bank in marking a check "paid" and charging it against a depositor's account constitute a "constructive acceptance" under G.S. 25-144 (N.I.L. § 137). This section provides that "where a drawee *to whom a bill is delivered for acceptance* destroys the same or refuses within twenty-four hours after such delivery . . . to return the bill accepted or nonaccepted to the holder, he will be deemed to have accepted the same." (Italics ours). It contemplates a case where the bill or check is delivered to the drawee for the purpose of procuring an acceptance or certification; it was never intended to apply to an erroneous payment. Britton, § 146; 10 Am. Jur. 2d, Banks § 583 (1963).

Prior to the enactment of the Uniform Negotiable Instruments Law, a number of courts, upon the theory of acceptance, allowed recovery by the true payee of a check against the drawee bank which had paid an unauthorized endorser. See Comment, 25 Ill. L. Rev. 343 (1930) for a collection of such cases, which includes *Pickle v. Muse*, 88 Tenn. 380, 12 S.W. 919, 7 L.R.A. 93, cited in *Dawson*. Since adoption of the N.I.L., which required all except so-called "constructive acceptances" (G.S. 25-144) to be in writing (G.S. 25-129), "to consider payment to a wrongful holder an acceptance is now a view with little authority in the case, and none in the critical, material. *Aigler*, 'Rights of Holder of Bill of Exchange Against the Drawer' (1925); 38 Harv. Law Rev. 857, 878 *et seq.*; Brannan 'Negotiable Instruments Law' (4th Ed.) 852." Comment, 25 Ill. L. Rev. 343, 344. *Accord:* 9 C.J.S., Banks & Banking § 343 (1938); Britton, § 146. See *Wrecking Co. v. Citizens' Bank & Trust Co.*, 159 La. 752, 106 So. 292 and *Baltimore & O. R. Co. v. Bank*, 102 Va. 753, 47 S.E. 837. *Dawson v. Bank, supra* (decided over 29 years after this State adopted the N.I.L.) and *Chamberlain Co. v. Bank of Pleasanton*, 98 Kan. 611, 160 Pac. 1138 are among the

small number of cases adopting this view. 9 C.J.S., Banks & Banking § 343 nn. 87 & 88 (1938).

Another theory advanced to hold the drawee liable to the payee or true owner for an unauthorized payment of his check is that of money had and received. But, "just how this can result is by no means clear. Since the debiting of the check to the drawer is a nullity the bank has received no money from any source to be held for the holder. Indeed, instead of having received money, the drawee has parted with its own money." Britton, § 146. *Accord: McKaughan v. Trust Co.,* 182 N.C. 543, 109 S.E. 355. This approach has been used but scantily. See Note, 4 Ark. L. Rev. 219 (1950).

The majority of jurisdictions, both before and after the adoption of the N. I. L., have allowed the holder to recover on the theory of a conversion *of the check* when the drawee pays a check upon a forged or unauthorized endorsement. 10 Am. Jur. 2d, Banks § 631 (1963); Note, 4 Ark. L. Rev. 219 (1950); Britton, § 146 n. 2; Brannan, Negotiable Instruments Law § 189, at 1321-24 (7th Ed. 1948). The following annotations, "Payment of check upon forged or unauthorized endorsement as affecting the right of the true owner against bank," collect the cases: 14 A.L.R. 764 (1921); 69 A.L.R. 1076 (1930); 137 A.L.R. 874 (1942).

When the drawee bank takes a check without the payee's endorsement, delivers cash in the amount of the check to one unauthorized to receive its payment, and ultimately returns the check to the drawer, the bank has assumed complete control over the check, dealt with it as its own, and withheld it from its rightful owner. Such dealings constitute a tortious conversion of the check, *Kentucky Title Savings Bank & Trust Co. v. Dunavan, supra; Louisville & N. R. Co. v. Citizens' & Peoples' Nat'l. Bank,* 74 Fla. 385, 77 So. 104; *Blacker & Shepard Co. v. Granite Trust Co.,* 284 Mass. 9, 187 N.E. 53; *Hartford Accident & Indemnity Co. v. Bear Butte Valley Bank,* 63 S.D. 262, 257 N.W. 642; and the payee is entitled to recover its value. *Prima facie,* this is the face value of the paper converted. *State v. First Nat'l. Bank,* 38 N.M. 225, 30 P. 2d 728; *Survey v. Wells, F. & Co.,* 5 Cal. 124; *Bentley Murray & Co. v. LaSalle St. Trust & Savings Bank,* 197 Ill. App. 322; Brannan, *op. cit. supra* § 60 at 898.

In discussing a holder's right against the drawee bank which has paid his check under a forged endorsement, Britton poses the very question presented by this appeal:

"Where an agent of the payee collects the check and obtains payment thereof from the drawee after signing the payee's name, is this a payment under a forged indorsement? It may

well be that it is not, for the delivery of the instrument to the drawee is not a negotiation. It is a surrender for payment. The signature of the payee's name in such case operates only as a receipt. Hence, in the supposed case, the question at issue is whether the agent had authority to collect. It is possible that such agent might be found to have authority to collect and yet have no authority to negotiate the instrument. If so, the instrument is discharged even though the agent embezzled the proceeds of the collection. The unauthorized signature of the payee is inoperative except as a receipt. If the agent did not have authority to collect the drawee would remain liable to the holder as before by having paid some one other than the holder and by asserting dominion over the instrument by returning it to the drawer." Britton, § 146 at 422.

A case on "all fours" with the facts in the case at bar is *James v. Union Nat'l. Bank,* 238 Ill. App. 159. In *James,* drawer drew his check to plaintiff in the amount of $1,625.00 (balance due on a truck), and delivered it to plaintiff's agent, F. L. Pruse. Pruse, who had no authority to endorse checks payable to his employer, endorsed the check "James & Co., F. L. Pruse," and presented it to defendant bank for payment. Defendant's cashier telephoned the drawer and said, "There is a man standing here who wants $1,-625.00. Am I to give it to him? The check reads James & Co." Drawer said, "It will be all right to cash it." The bank cashed the check; Pruse took the money and absconded. In allowing plaintiff to recover the amount of the check, the Illinois court said:

"The authority of Pruse to collect the amount due did not include authority to indorse the check received for the amount due. . . . (T)he bank assumed the sole responsibility of treating Pruse as the agent of the plaintiff with authority to indorse his name upon the check and collect the proceeds. . . . It is evident that the bank sought the wrong party for information. It should have inquired of the payee to find out if Pruse was authorized to indorse the check. . . . Where a drawee bank refuses to pay a check which has not been certified or accepted, the holder's action is against the maker, but where the bank pays it and pays it without authority the bank is liable to the holder. . . . It (the check) was the property of plaintiff and while the maker might stop payment of it altogether, he had no right, as against plaintiff, to direct that it be paid to someone other than the payee or his indorsee." 238 Ill. App. at 162, 165, 166.

Relying upon *Louisville & N. R. Co. v. Citizens' & Peoples' Nat'l. Bank, supra,* the Illinois court concluded that the payee could "treat the conduct of the bank as a tort and sue in trover for conversion for the value of the check or waive the tort and sue in assumpsit." 238 Ill. App. at 166. In the *Louisville & N. R. Co.* case, defendant bank paid a check upon the unauthorized endorsement of plaintiff payee's agent. In allowing recovery, the Florida court said, "(T)he bank took the responsibility of saying that a payment to Weekly (agent) was a payment to the plaintiff." 74 Fla. at 388, 77 So. at 105. "Power or authority of an agent to endorse checks payable to the order of his principal is not to be inferred from the fact that the agent has express authority to collect moneys and receive checks for his principal." Brannan, *op. cit. supra* § 23, at 440. *Accord: Kentucky Title Savings Bank & Trust Co. v. Dunavan, supra; Doeren v. Krammer,* 141 Minn. 466, 170 N.W. 609; *Central Trust Co. v. Hahn-Jacobsen Co.,* 33 N.E. 2d 388 (Ct. App. Ohio); Annot., Agency, Endorsement of Commercial Paper, 12 A.L.R. 111, 120 (1921) supplemented in 37 A.L.R. 2d 453 (1954). A bank which deals with an agent must, to protect itself, ascertain the extent of the agent's authority. *Nationwide Homes v. Trust Co.,* 262 N.C. 79, 136 S.E. 2d 202.

The payee of a check, as well as the drawer, has a right to expect the drawee bank to pay it in accordance with its terms. Therefore, when the drawer issues a check to the order of a named payee, the payee—absent his agreement to the contrary, or any conduct on his part creating an estoppel—can assume that he has valuable paper of a particular commercial character, *i.e.,* one which will require *his* endorsement for title to pass to a taker, or for discharge to be effected by the action of the drawee in marking the check "paid" and charging it against the account of the drawer.

The case at bar is not to be confused with the situation in the "imposter cases" where the drawer, mistaken as to the identity of the person to whom he delivers a check, nevertheless intends that the procurer himself shall *take title and possession as payee.* In such cases the endorsement of the imposter will be regarded as genuine as to subsequent persons dealing in good faith with the instrument, and the bank is protected. See *McKaughan v. Trust Co.,* 182 N.C. 543, 546, 109 S.E. 355, 356; Annot., Check—Imposter—Who Bears Loss, 81 A.L.R. 2d 1367 (1962); Brannan, *op. cit. supra* § 23, at 470-480; Britton § 151; 10 Am. Jur. 2d, Banks § 638 (1963); *Cf. Keel v. Wynne,* 210 N.C. 426, 187 S.E. 571, criticized in Note, 15 N.C.L. Rev. 186 (1937).

This record does not compel the inference that when he delivered the check in question to Durham, drawer intended Durham to be the payee under the name and style of Modern Homes Construction Company. The evidence is that Moore had signed one of the corporation's construction contracts. This permits the inference that he knew he was dealing with an agent and that his representation to the Bank, "This man is Modern Homes Construction Company," was only a declaration of his mistaken belief that Durham's position with the corporation was such that he had authority to collect its commercial paper by the endorsement: "Modern Homes Construction Company by Ray Durham." If this was the purport of his declaration, it was clearly Moore's intent that title should pass to Modern Homes Construction Company, the payee named in the check, and not to Durham as an individual. Plaintiffs' Exhibit No. 3, a letter written on September 29, 1962, by the assistant cashier of the Bank to plaintiff Construction Company with reference to the transaction in question contains this statement: "On April 21, 1962 Mr. Frank S. Moore, one of our customers, before his death, brought a man, whom he introduced as *Mr. Durham, one of your representatives,* into our bank." (Italics ours.) This tends to show that the Bank knew it was dealing with the payee's agent and not an individual payee doing business under an assumed name. If drawer's statement to defendant's cashier is also susceptible to the inference that drawer thought Durham *himself* was doing business under the assumed name of Modern Homes Construction Company, this is certainly not the *only* permissible inference. See generally *Harsin Motor Co. v. Colorado Savings & Trust Co.,* 131 Colo. 595, 600, 284 P. 2d 235, 237; 9 C.J.S., Banks & Banking § 356 at 742-43 (1938). Conflicting inferences make a case for the jury. 4 Strong, N. C. Index, Trial § 21 (1961) and cases cited therein.

In this case, when Moore told defendant that Durham was Modern Homes Construction Company, had defendant required him to reissue the check naming Ray Durham as payee, it would have avoided any liability to plaintiffs and eliminated any possible discrepancy between drawer's written order, the check, and his oral instructions to the Bank. (If drawer's purpose was to obtain a receipt purporting to be that of the corporation, however, making the check to Durham would have thwarted it.) In paying a check to an agent, a bank assumes the risk that he is without authority to endorse it. A drawer has no right, as against the payee, to direct its payment to anyone else.

We adopt the reasoning in *James v. Bank, supra,* except insofar as it purports to authorize the plaintiff to waive the tort of conver-

sion and to sue in assumpsit. If recovery is to be had against the drawee bank, it must, in our opinion, be upon the theory of conversion.

Upon discovery of Durham's defalcation, plaintiff Construction Company had the option to sue defendant Bank for conversion *or* the drawer upon the original obligation. Plaintiffs have elected to sue the Bank. Assuming that plaintiffs had elected to sue the drawer; that the suit survived the issue of the authority of Construction Company's agent to collect; and that they had recovered judgment against the drawer, it is clear that drawer's conduct in advising and requesting the Bank to make payment to Durham would have estopped drawer in any subsequent suit against the Bank. It is equally clear that where a drawer has caused the drawee to incur liability for the conversion of a check by misrepresenting the authority of the endorser to collect payment, nothing else appearing, the bank would have a cause of action over against the drawer. Obviously any attempt to collect from the absconded Durham would be futile.

For the reasons stated, we hold that plaintiffs have alleged and offered evidence tending to establish defendant's liability for a conversion of the check in suit, and that the court below erred in allowing defendant's motion for nonsuit. At the trial, the Bank will have an opportunity to challenge plaintiff Construction Company's claim that it is not bound by Durham's endorsement.

Reversed.

MOORE, J., not sitting.

LAKE, J., dissenting: I agree with much that is said in the majority opinion, especially with the observations therein concerning the theory of implied or constructive acceptance set forth in *Dawson v. Bank,* 196 N.C. 134, 144 S.E. 833, and in *Dawson v. Bank,* 197 N.C. 499, 150 S.E. 38. I cannot agree, however, that the record in this case shows a conversion of the plaintiff's property by the defendant bank.

It is not necessary, upon this record, to decide whether a drawee bank, paying a check in reliance upon a forged or unauthorized indorsement of the payee's name, nothing else appearing, has converted property of the payee. I am inclined to doubt that the bank has done so. The contrary view is unquestionably supported by the authorities cited in the majority opinion. In that situation, the drawee bank has not paid pursuant to the order of its depositor and, therefore, has no right to charge the payment to his account; *i.e.,*

credit the payment upon the bank's indebtedness to the depositor. The debt of the depositor-drawer to the payee of the check has not been paid and the depositor-drawer must pay that debt and recover from the bank by demanding a recredit of his account with the amount of the unauthorized payment. The conversion theory adopted by the majority opinion may be a short cut to that ultimate result, but I doubt its soundness.

In my opinion, the conversion theory, even if sound in the situation above supposed, has no application here because, in the present case, the depositor-drawer accompanied Durham to the bank and said to the teller, "This man is Modern Homes Construction Company," whereupon the drawee bank cashed the check. When the drawer of a check tells the drawee bank, "This man now standing before you is the person I intended by the name I inserted in the check as payee," the bank, in my opinion, has the right, if not the duty, under its contract with the depositor-drawer, to pay the check to the person so identified by the depositor-drawer, whatever the true name of the person presenting the check may be. The bank, so paying the check, has the right to charge it to the depositor-drawer's account. To the extent of the payment so made, it has performed its contract with its depositor and has done no wrong to anyone else. The present plaintiff's right, if any, is against its debtor on its original claim against him.

The cases cited by the majority are distinguishable from the one at hand. In none of them did the depositor-drawer say to the drawee bank, "The man now presenting the check to you is the person intended by me as the payee." In *James v. Bank*, 238 Ill. App. 159, cited by the majority opinion, the statement to the bank was made over the telephone. The bank's inquiry was, "There is a man standing here who wants $1,625.00; am I to give it to him; the check reads James & Co." The depositor-drawer's answer was, "It will be all right to cash it." This seems to me to be an inquiry by the bank as to the genuineness of the check and an acknowledgment by the depositor-drawer that the check is genuine. It would seem that the drawer was saying, "It will be all right to cash it if he is James & Co.—that is, its authorized agent." On such facts, assuming the validity of the conversion theory, there is a decision by the bank to pay the check to someone other than the payee, or the order of the payee, and so the bank has converted the real payee's property. Here, it has not done so for it has paid the precise person said by the depositor-drawer to be the real payee intended by him. Consequently, I think the judgment should be affirmed.

PLESS, J. I join Justice Lake in his dissent. Had the bank failed to pay the check, the least it could have expected would have been the loss of the business of the drawer and the payee. And when a bank fails to pay a valid check to a payee whom the drawer properly identifies, it might well fear litigation to result.