NORTH CAROLINA NATIONAL BANK EXECUTOR OF THE ESTATE OF JANE
GAITHER MURRAY, DECEASED v. McCARLEY & COMPANY, INC.

No. 773SC132

(Filed 21 December 1977)

1. **Trover and Conversion § 1; Uniform Commercial Code § 64—conversion of securities by stock broker—sale upon forged signature**

    Plaintiff executor's complaint stated a claim for relief against defendant stock broker for conversion of securities owned by testatrix by selling such securities when the husband of testatrix, without her authority, delivered to defendant broker the certificates with stock assignment instruments bearing the forged signature of testatrix, the provision of G.S. 25-8-318 purporting to protect a broker who transfers securities at the insistence of a principal who has no right to dispose of them being available only as a defense, with the burden on defendant to present evidence that it acted in good faith and in accordance with reasonable commercial standards.

2. **Uniform Commercial Code § 25; Banks and Banking § 9.2—draft "payable through" bank—bank as collector—maker as drawee**

    Where a draft declared that it was "payable through" a bank, such bank is deemed to be a collecting bank which was not authorized to pay the instrument but only to make presentment to the drawee, G.S. 25-3-120, and defendant stock broker assumed the status of a drawee when it made a "payable through" draft with plaintiff executor's testate as payee.

3. **Banks and Banking § 11.2; Trover and Conversion § 1; Uniform Commercial Code § 30—payment of forged drafts—conversion by maker**

    Plaintiff executor's complaint was sufficient to state a claim for relief against defendant stock broker for conversion of drafts where it alleged that defendant issued drafts payable through a bank to plaintiff's testate and that defendant paid the drafts upon the forged indorsements of plaintiff's testate. G.S. 25-3-419(1)(c).

APPEAL by plaintiff from *Browning, Judge.* Order entered 22 October 1976 in Superior Court, PITT County. Heard in the Court of Appeals 6 December 1977.

Civil action wherein plaintiff filed a complaint seeking damages of $109,003.22 from the defendant for the alleged conversion of certain securities and the improper payment of the proceeds from the sale of such securities. From an order granting defendant's motion to dismiss pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure, plaintiff appealed.

*R. D. Darden, Jr., and Kenneth M. Kirkman, for the plaintiff appellant.*

*Speight, Watson and Brewer, by W. W. Speight and W. H. Watson, for the defendant appellee.*

HEDRICK, Judge.

A 12(b)(6) motion tests the sufficiency of the complaint to state a claim upon which relief can be granted. A complaint may be dismissed pursuant to Rule 12(b)(6) " 'if clearly without any merit; and this want of merit may consist in an absence of law to support a claim of the sort made, or of facts sufficient to make a good claim, or in the disclosure of some fact which will necessarily defeat the claim.' But a complaint should not be dismissed for insufficiency *unless it appears to a certainty that plaintiff is entitled to no relief under any state of facts which could be proved in support of the claim.* Pleadings are to be liberally construed. Mere vagueness or lack of detail is not ground for a motion to dismiss, but should be attacked by a motion for a more definite statement." 2A Moore's Federal Practice, § 12.08 (1974). Accord, *Sutton v. Duke*, 277 N.C. 94, 176 S.E. 2d 161 (1970). The principle enunciated in *Sutton v. Duke, supra,* was succinctly stated in *Cassels v. Motor Co.*, 10 N.C. App. 51, 55, 178 S.E. 2d 12, 15 (1970) as follows:

"A complaint is sufficient to withstand a motion to dismiss where no insurmountable bar to recovery on the claim alleged appears on the face of the complaint and where allegations contained therein are sufficient to give a defendant sufficient notice of the nature and basis of plaintiffs' claim to enable him to answer and prepare for trial."

[1] The first portion of plaintiff's complaint, labeled "FIRST CAUSE OF ACTION," is summarized and quoted as follows: The deceased, Jane Gaither Murray, left a will which has been admitted to probate in Carteret County and which designates the plaintiff as executor. During the life of the deceased, her husband, James David Murray, without her authority, delivered certain stock certificates along with stock assignment instruments bearing the forged signature of the deceased to the defendant corporation, a stock broker. The complaint then reads as follows:

"6. THAT Defendant knew or should have known from the circumstances surrounding the aforesaid sales of the securities of Jane Gaither Murray that said sales were made without her authority.

"7. THAT Defendant was under a duty to inquire as to the propriety of the aforesaid transactions, and negligently failed to do so.

"8. THAT Defendant thus converted the said securities belonging to Jane Gaither Murray."

Article 8 of the Uniform Commercial Code, as codified in Chapter 25 of the North Carolina General Statutes, confers on the true owner of securities which have been transferred upon an unauthorized endorsement, remedies against the issuer of the securities, G.S. 25-8-311, and against the ultimate purchaser of the securities, G.S. 25-8-311(a), 315. It does not appear that Article 8 provides any right of action in favor of the owner against the broker who consummated the transfer. *See* Folk, *Article Eight: Investment Securities*, 44 N.C. L. Rev. 654, 694 (1966). However, the Uniform Commercial Code is by its own terms complementary to the common law except where there is a conflict. G.S. 25-1-103; G.S. 25-8-315, Official Comment 2.

On the facts set forth in the allegations in plaintiff's first claim there clearly exists a common law action of conversion against the defendant. The rule is stated in 12 Am. Jur. 2d, *Brokers* § 105 (1964): "As a general rule, even though a broker may act in the best of faith, if he sells personal property in behalf of a principal who has no title thereto . . . he is liable to the true owner for its conversion; . . . ." *See also Southern Ohio Bank v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 479 F. 2d 478 (6 Cir. 1973); *Patterson v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 266 N.C. 489, 146 S.E. 2d 390 (1966). While the Code, G.S. 25-8-318, purports to protect a broker who transfers securities at the insistence of a principal who has no right to dispose of them, its protection is only available as a defense with the burden on the defendant to present evidence that it acted in good faith and in accordance with reasonable commercial standards. *Southern Ohio Bank v. Merrill Lynch, Pierce, Fenner & Smith, Inc., supra.*

When the allegations of plaintiff's first claim for relief are considered in the light of the foregoing principles of procedure

and substance, we are of the opinion that the complaint states a claim for relief against the defendant for the conversion of Mrs. Murray's securities sold by the defendant without the true owner's authority.

That portion of plaintiff's complaint denominated as his "SECOND CAUSE OF ACTION" incorporates all allegations previously stated and, in addition, alleges as follows:

"2. THAT Defendant, having caused said securities to be sold, issued drafts on which Defendant was maker and payor, payable through Wachovia Bank and Trust Company, N.A. and made payable to Jane Gaither Murray; said drafts being more fully identified in Exhibit A hereto.

"3. THAT said drafts were negotiated by indorsements purporting to be the signature of Jane Gaither Murray but which were not, in fact, signed by her.

"4. Defendant was under a duty to refuse to pay said drafts unless indorsed by the payee, Jane Gaither Murray.

"5. Defendant did, in fact, pay said drafts upon the unauthorized, non-genuine signatures aforesaid, in violation of the aforesaid duty."

[2] Defendant's status in the context of negotiable instruments law is critical to the question of whether this second portion of plaintiff's complaint states a claim under Rule 8(a). According to our law, when an instrument declares that it is "payable through" a bank then such bank is deemed to be a collecting bank which is not authorized to pay the instrument, but only to make presentment to the drawee. G.S. 25-3-120 and Official Comment thereunder; *see also First Federal Savings & Loan Assoc. v. Branch Banking and Trust Co.*, 282 N.C. 44, 191 S.E. 2d 683 (1972). Defendant assumed the status of a drawee when it made a "payable through" draft with the plaintiff's intestate as payee. *See* 2 Anderson on the Uniform Commercial Code § 3-120:3 (2d Ed. 1971).

The Uniform Commercial Code provides in absolute terms that "[a]n instrument is *converted* when . . . it is paid on a forged indorsement." G.S. 25-3-419(1)(c) (emphasis added). Justice (now Chief Justice) Sharp's opinion in *Modern Homes Construction Co. v. Tryon Bank and Trust Co.*, 266 N.C. 648, 147 S.E. 2d 37 (1966),

which antedated our adoption of the UCC, presaged the above statute and aligned North Carolina with the majority view which allows "the holder to recover on the theory of a conversion *of the check* when the drawee pays a check upon a forged or unauthorized endorsement." *Modern Homes Construction Co. v. Tryon, supra* at 653, 147 S.E. 2d at 41; *see* Navir, *Contracts*, 45 N.C. L. Rev. 897 (1967). Justice Sharp stated the rule as follows:

> "When the drawee bank takes a check without the payee's endorsement, delivers cash in the amount of the check to one unauthorized to receive its payment, and ultimately returns the check to the drawer, the bank has assumed complete control over the check, dealt with it as its own, and withheld it from its rightful owner. Such dealings constitute a tortious conversion of the check, [citations omitted]; and the payee is entitled to recover its value. *Prima facie*, this is the face value of the paper converted." (Citations omitted).

Other authorities clearly support this principle. 2 Anderson on the Uniform Commercial Code, *supra* at § 3-419; Annot., 87 ALR 2d 638; Annot., 100 ALR 2d 670. We feel compelled to note that some contrary language appears in *First Federal Savings & Loan Assoc. v. Branch Banking and Trust Co., supra* at 56-7, 191 S.E. 2d at 691. In *First Federal*, however, since the plaintiff was not the payee of the draft, there was no allegation of conversion in the plaintiff's complaint. The conflict is apparently resolved by the different positions which the plaintiffs in the two cases occupy.

[3] In the present case the plaintiff has alleged facts sufficient to place itself within the framework of the law above. According to the allegations, the plaintiff as the payee was the victim of a conversion of the draft when it was paid by defendant upon a forged endorsement. The plaintiff is, therefore, entitled to proceed in its effort to prove its allegations.

We note that the trial judge in his order dismissing plaintiff's claims pursuant to defendant's Rule 12(b)(6) motion made the gratuitous conclusion that "[p]laintiff alleges inconsistent remedies in its first and second cause of action, and an election between the two inconsistent remedies is required by law." While the plaintiff clearly cannot *recover* on both claims, Rule 8(e)(2)

permits a party to "state as many separate claims . . . as he has regardless of consistency . . . ." *See Alpar v. Weyerhaeuser Co.*, 20 N.C. App. 340, 201 S.E. 2d 503 (1974). The evidence offered in support of the allegations in the complaint will determine upon which claim, if either, plaintiff will recover.

For the reasons stated the order dismissing plaintiff's complaint is reversed and the cause is remanded to the Superior Court of Carteret County for further proceedings.

Reversed and remanded.

Judges MORRIS and ARNOLD concur.