LEX A. SCHWABENTON v. SECURITY NATIONAL BANK
OF GREENSBORO.

(Filed 14 January, 1960.)

**1. Banks and Banking § 3—**

   The deposit of money in a bank creates the relationship of debtor
   and creditor between the bank and the depositor.

**2. Payment § 4—**

   The burden is upon the debtor to establish his plea of payment.

**3. Banks and Banking § 10—**

   A bank debiting the account of a depositor has the burden of show-
   ing the authority for entering such debit.

**4. Same—**

   A bank relying upon G.S. 53-52 has the burden of showing delivery
   of the check to the depositor more than sixty days before claim is
   made that the check was a forgery.

**5. Same—**

   The claim of depositor against the bank for debiting the depositor's
   account with forged checks is barred as to each individual forgery in
   sixty days after receipt by the depositor of the cancelled checks from
   the bank without calling the bank's attention to the fact that the checks
   were forged.

**6. Same—**

   A depositor receives cancelled checks from a bank within the mean-
   ing of G.S. 53-52 upon delivery of the vouchers into the depositor's
   possession, actual or constructive, and when the bank mails statements
   and checks to the depositor, the depositor receives such checks as of
   the time the depositor accepts them from the post office in person or
   through his authorized agent, and it makes no difference whether the
   depositor looks at his statement or whether the depositor's agent, au-
   thorized to receive mail from the post office, extracts such vouchers
   from the statement before the depositor has an opportunity to examine
   them.

APPEAL by defendant from *Armstrong, J.,* March 16, 1959 Civil
Term, of GUILFORD (Greensboro Division).

Plaintiff seeks to recover various amounts charged to his bank
account with defendant. The charges are based on checks purport-
ing to bear plaintiff's signature. They are payable to cash and en-
dorsed by one Ingram, an employee of plaintiff. The first assertedly
improper debit was made in August 1953. One or more such charges
were made each month thereafter. The last such debit was made
on 21 December 1954. The amended complaint fixes the aggregate
of such charges at $12,189. Plaintiff testified he first discovered that
an improper charge had been made to his account on 5 January 1955.

On 28 January 1955 he filed with defendant a detailed list of the alleged forged checks.

Defendant denied making an improper debit to plaintiff's account. It also alleged that it furnished plaintiff each month with a statement of his account, showing in detail each debit and credit and accompanied the monthly statements with the checks or vouchers on which it relied to support each charge. It alleged plaintiff was negligent in failing to examine the monthly statements and in failing to warn it of the alleged forgeries. It also pleaded the provisions of G.S. 53-52 as a protection against claims based on checks delivered more than sixty days prior to demand for reimbursement.

The following issues were submitted:

"(1) Were any of the checks, of Plaintiff's Exhibits 6 through 48, signed by the plaintiff or by anyone upon his authority or at his direction?"

"(2) Did the plaintiff receive any of the cancelled checks which are represented by Plaintiff's Exhibits 11 through 48?"

"(3) What amount is the plaintiff entitled to recover?"

The court gave peremptory instructions with respect to each issue, directing the jury to answer the first and second issues in the negative and the third issue in the sum of $12,189. Following the instruction the jury returned and, having answered "no" to the first issue, "yes" to the second issue, and "$3,175 plus interest" to the third, the court refused to accept the verdict. It again peremptorily instructed the jury to answer the second issue "no" and the third issue "$12,189," the amount claimed by plaintiff. The jury retired and changed the answers to accord with the court's instruction. Judgment was entered on this verdict whereupon defendant excepted and appealed.

*Hoyle & Hoyle, Jordan, Wright, Henson & Nichols,* and *Karl N. Hill, Jr., for plaintiff, appellee.*

*Smith, Moore, Smith, Schell & Hunter for defendant, appellant.*

RODMAN, J. Plaintiff testified he neither signed nor authorized the signing of his name to the disputed checks.

When one deposits money in a bank, the relationship of debtor and creditor is created. A debtor who pleads payment has the burden of establishing his plea. *Finance Co. v. McDonald,* 249 N.C. 72, 105 S.E. 2d 193. Defendant, as a debtor, must not only show it made the debit entry; it must show the authority for making such entry. *Sides v. Bank,* 246 N.C. 672, 100 S.E. 2d 67; *Arnold v. Trust*

*Co.*, 218 N.C. 433, 11 S.E. 2d 307; *Bank v. Thompson,* 174 N.C. 349, 93 S.E. 849.

The court properly overruled defendant's motion to nonsuit and correctly placed on defendant the burden with respect to the first issue. We do not deem it necessary to decide whether there was any evidence with respect to any item which would support an affirmative answer to the first issue.

There is little, if any, disagreement between the parties on the facts relating to the second issue. Certainly there is evidence from which a jury could find that monthly statements of plaintiff's account were delivered to him or to his authorized agent at the Bank or were mailed to plaintiff. The evidence tends to show that the checks were mailed to the customer if not called for by the 10th of the month, and with perhaps one or two exceptions plaintiff's statements and cancelled checks were mailed to him. The evidence is sufficient for a jury to find that these statements contained the written instruments on which defendant relied in making each charge. The envelopes in which the bank mailed most of the monthly statements were offered in evidence. Plaintiff, Ingram (his employee who cashed the forged checks), and Dwight Lohr (another employee of plaintiff) each had keys to plaintiff's post office box. Ingram customarily got the mail from the Post Office and carried it to plaintiff's office. Plaintiff was a salesman. His business frequently called him out of town for several days at a time. He testified when he examined his bank statement he did not see any of the forged checks and not until January 1955 did he learn that any forged checks had been charged to his account.

The statute, G.S. 53-52, provides:

"No bank shall be liable to a depositor for payment by it of a forged check or other order to pay money unless within sixty days after the receipt of such voucher by the depositor he shall notify the bank that such check or order so paid is forged."

The burden is on the bank seeking the protection afforded by this statute to show delivery of the voucher to the depositor more than sixty days before the claim is made. When that fact is established, it constitutes a complete defense to a claim based on such voucher. Where several vouchers paid and delivered at different times are made the basis of a claim, the statute applies and bars not from the delivery of the first nor the last such voucher but runs against each individual voucher from the date of its delivery. The mailing of the statements and checks and the acceptance thereof from the Post Office by plaintiff in person or through his authorized agent constituted a "receipt" by plaintiff within the meaning of the statute.

Once the vouchers came into plaintiff's possession, actual or constructive, by delivery to his authorized agent, the clock started, and time began to run against the depositor. It makes no difference whether he looked at his statement and failed to discover the voucher, or, if, as is here suggested, the agent was again unfaithful to his trust and extracted the vouchers from the statement before the depositor had an opportunity to examine the statement. *Fuel Co. v. Bank,* 210 N.C. 244, 186 S.E. 362; *Trust Co. v. Bank,* 166 N.C. 112, 81 S.E. 1074; *Cesaroni v. Savannah Bank & Trust Co.,* 82 S.E. 2d 172; *Holloman v. R. R.,* 172 N.C. 372, 90 S.E. 292; *Lynch v. Johnson,* 171 N.C. 611 (at p. 613 and 620), 89 S.E. 61; *Atlantic Coast Line R. Co. v. Seward,* 142 So. 881; *Carter v. St. Louis-San Francisco Ry. Co.,* 18 S.W. 2d 376; *Fort Worth Elevators Co. v. Keel & Son,* 231 S.W. 481; *Payne v. Johnson, Fluker & Co.,* 108 S.E. 803; *Aetna Casualty & Surety Co. v. Patton,* 57 S.W. 2d 32; *McNeill v. Fidelity & Casualty Co. of N. Y.,* 82 S.W. 2d 582, 2 C.J.S. p. 1240.

There was evidence from which the jury could, as they originally did, answer the second issue "yes." The court was in error in refusing to accept the verdict and in requiring the jury to answer the issue in the negative. Based on an affirmative answer to the second issue, the jury had to determine which vouchers were called to the Bank's attention as illegal within the sixty-day period. Only such vouchers could constitute a valid claim against defendant.

New trial.