NATIONWIDE HOMES OF RALEIGH, N. C., INC., v. FIRST-CITIZENS BANK & TRUST COMPANY, AND ELOISE M. CURRIN, ADMINISTRATRIX OF THE ESTATE OF S. T. CURRIN, JR., DECEASED.

(Filed 16 June, 1966.)

**1. Banks and Banking § 10—**

Where the relationship of debtor and creditor is created between a bank and a person by the deposit of funds in the bank in the name of such person, the bank has the burden of proving its defense of the discharge of the debt, and when the bank pays out funds on checks signed by an agent of the depositor it must show that the agent had authority from the depositor to draw the funds from the account or that the creditor is estopped or otherwise barred from asserting the agent's lack of authority.

**2. Appeal and Error § 49—**

Findings of fact by the trial court which are supported by competent evidence are conclusive on appeal.

**3. Same—**

Where there are no exceptions to the findings of fact, the findings are conclusive on appeal.

**4. Trial § 6—**

A stipulation of the parties amounts to a judicial admission, binding upon the parties.

**5. Banks and Banking § 10—**

If checks drawn by an agent of the depositor are not forgeries G.S. 53-52 has no application; if the checks are forgeries, the defense of the statute is not available to the bank when the depositor gives notice to the bank within the time provided by the statute.

**6. Same—**

The rule that a depositor has notice of checks forged on its account upon the mailing of the forged checks to the depositor, even though the checks are received for the depositor by the agent uttering the forgeries, does not apply when the evidence conclusively shows that the bank creditor had no knowledge of the existence of the account but that its agent opened the account without authorization.

**7. Same—**

G.S. 53-52 does not require notice in any specified form, and when the findings of fact and stipulations of the parties disclose that the principal, in less than 60 days from receipt by the principal of the bank statement gave notice sufficient to advise the bank that the agent had no authority to open the account in the principal's name or draw checks thereon, and that the purported signature of the secretary of the corporate principal on the signature card was a forgery, such notice is sufficient under the statute, notwithstanding that an itemized list of the checks so paid without authorized signature is not furnished until more than 60 days after receipt of the bank statement and vouchers.

**8. Same—**

There is no duty upon a depositor to examine endorsements on his genuine checks, and the fact that a check of a principal is first endorsed by the payee and thereafter endorsed by the agent of the principal, who then deposits the check in an account, is not notice to the principal that its agent had deposited the check in an account which the agent had, without authority, opened in the name of the principal and upon which the agent had drawn checks without authority, the principal being without knowledge that the unauthorized account had been opened in its name.

**9. Trial § 57—**

In a trial by the court under agreement of the parties, mere entry of appeal without the filing of any exception to the judgment or to the refusal of the court to find facts as requested until the service of statement on appeal, does not meet the requirements of G.S. 1-186.

**10. Appeal and Error § 19—**

An assignment of error must disclose the questions sought to be presented without the necessity of going beyond the assignment itself. Rule of Practice in the Supreme Court No. 19(3).

MOORE, J., not sitting.

APPEAL by defendant First-Citizens Bank & Trust Company from *Latham, S.J.,* January 1965 Assigned Session of WAKE.

The plaintiff instituted this action against the First-Citizens

Bank & Trust Company, hereinafter called the Bank. The essence of its complaint is that S. T. Currin, Jr., now deceased, then its employee, without authority from the plaintiff to do so, opened an account in the Bank in the name of the plaintiff and deposited therein, from time to time, $13,956.45 of the funds of the plaintiff, which funds the Bank paid out upon checks which the plaintiff did not sign or authorize and which were not the checks of the plaintiff but were forgeries. The plaintiff seeks judgment against the Bank for the full amount of such deposits, less those disbursements from the account which it concedes were paid out to the ultimate benefit of the plaintiff, though without its authority, the balance so sought to be recovered being $8,663.69.

The answer of the Bank admits the amount so deposited in the account and that the entire amount was paid out by it upon checks drawn by Currin. The remaining material allegations of the complaint are denied by the Bank. For further answers, the Bank alleges in substance:

(1)   That the plaintiff's parent corporation is the real party in interest and a necessary party to this action;

(2)   The estate of S. T. Currin, Jr. is primarily liable to the plaintiff and is a necessary party to the action;

(3)   The plaintiff was negligent in failing to supervise properly the activities of S. T. Currin, Jr., and is thereby estopped to maintain this action;

(4)   The plaintiff ratified certain portions of the acts of S. T. Currin, Jr. with reference to this account and is estopped thereby to repudiate the remainder;

(5)   The plaintiff clothed Currin with authority over its business operations in the Raleigh area and by negligent failure to exercise proper supervision of his activities made possible the loss of which it complains;

(6)   The plaintiff carried a policy of Fidelity Insurance extending to the operations of Currin and must exhaust its remedies against its insurer before proceeding against the defendant Bank;

(7)   On or prior to 10 January 1962, the plaintiff received all bank statements and cancelled checks relating to the said account and failed within sixty days after such receipts to notify the Bank that the said checks were forgeries, for which reason the defendant pleads the provisions of G.S. 53-52 in bar of the plaintiff's right to recover.

Upon motion of the plaintiff, the material portions of the Bank's first further answer were stricken. Upon motion of the Bank, Eloise M. Currin, Administratrix of the Estate of S. T. Currin, Jr., was

made a party defendant, but after she filed answer the Bank elected to take a voluntary nonsuit as to her and the action, as against her, was dismissed.

The action came on to trial and at the close of the plaintiff's evidence the Bank's motion for judgment of nonsuit was allowed. From that judgment the plaintiff appealed to this Court and the judgment of nonsuit was reversed. *Nationwide Homes v. Trust Co.,* 262 N.C. 79, 136 S.E. 2d 202.

The matter then again came on for trial and, by consent, was heard by Latham, S.J., without a jury.

Prior to trial the parties stipulated that the signature card presented to the Bank by S. T. Currin, Jr., bearing his signature and purporting to bear the signature of George Coleman, an officer of the plaintiff, was "filled out without the authorization and knowledge of the plaintiff corporation; that the signature of George Coleman was a forgery committed by the said S. T. Currin, Jr." They then further stipulated that "all checks drawn on the subject account are forgeries committed by S. T. Currin, Jr. and are not checks or drafts of the plaintiff."

After hearing this evidence, Latham, S.J., made numerous findings of fact, which are incorporated in his judgment. The defendant did not except to any of these findings of fact and each of them is supported by evidence in the record. Those material to this appeal may be summarized as follows:

Currin had no authority, express or implied, to open a bank account without the approval of the Home Office of the plaintiff. It was his duty to send all bills for labor and materials to the plaintiff's Home Office and all such bills were paid from that office by the parent corporation. Currin falsely represented himself to the Bank as vice-president of the plaintiff corporation and, without authority from the plaintiff, opened an account in the Bank in the plaintiff's name, presenting to the Bank a signature card signed by him and purporting to be signed by George Coleman, secretary of the plaintiff, Coleman's signature thereon being a forgery. The signature card purported to authorize the payment of checks signed in the name of the plaintiff by Currin. Currin deposited in the account, from time to time, a total of $13,956.45, all of which, with the exception of a trivial amount, was disbursed by the Bank upon checks signed in the name of the plaintiff by Currin, which checks were unauthorized by and unknown to the plaintiff or its parent corporation. The Bank is entitled to a credit of $5,292.76 by reason of certain of the disbursements which were to the benefit of the plaintiff. One of the deposits by Currin in the account consisted of a check drawn by the parent corporation payable to A. L. Franklin and

endorsed by Franklin, and then endorsed by Currin for deposit in the Bank to the credit of the plaintiff. When returned to the drawer by the drawee bank, this check bore the rubber stamp endorsement of the defendant and another bank stating "prior endorsements guaranteed." On 28 December 1961, Currin committed suicide. A few days prior to his death, the regional manager of the plaintiff corporation discovered the cancelled checks and check book relating to this bank account in Currin's locked desk at the plaintiff's office in Raleigh. Prior to that time, no officer or authorized employee of the plaintiff knew of the existence of this account. On or about 28 December 1961, the plaintiff's regional manager went to the Bank and notified its head bookkeeper that he had discovered this unauthorized account, asked for a copy of the resolution of the plaintiff corporation authorizing the opening of the account, and upon being shown the signature card filed with the Bank by Currin advised the Bank that Currin was not and never had been a vice-president of the plaintiff and that the signature of Coleman upon the card was a forgery.

Latham, S.J., concluded from his findings of fact so made that Currin had no apparent or implied authority to open the account and draw checks thereon; that the checks paid by the Bank were "forged and unauthorized, were not checks of the plaintiff"; that the endorsement on the check of the plaintiff payable to Franklin, above mentioned, was not notice to the plaintiff of the existence of the Bank account; that all the money deposited in the account belonged to the plaintiff; that $5,292.76 was the full amount of credit to which the defendant is rightfully entitled; that the entire transaction was a scheme designed by Currin to defraud the plaintiff and all of the checks drawn on the account by Currin were in furtherance of 'this scheme; that the plaintiff did not receive the vouchers showing payments from the account by the Bank until on or about 28 December 1961, and notice was then given to the Bank of "the forged and unauthorized account and checks," in accordance with G.S. 53-52; and that none of the plaintiff's claim is barred. Upon these findings and conclusions, Latham, S.J., adjudged that the plaintiff have and recover of the defendant $8,663.69, together with interest thereon from 28 December 1961, and costs. From this judgment the Bank now appeals.

*Mordecai, Mills and Parker for defendant appellant.*

*Yarborough, Blanchard, Tucker & Yarborough for plaintiff appellee.*

LAKE, J.   The principal contention of the Bank is that the plaintiff, on or about 28 December 1961, at which time its regional man-

ager discovered the existence of the bank account and the checks paid prior to that time, did not notify the Bank that the checks were forgeries but merely notified the Bank that the account was unauthorized and the signature of Coleman upon the signature card was a forgery. It contends that, though the plaintiff received the bank statement for December on or before 10 January 1962, and, therefore, on that date had possession of all cancelled checks, the plaintiff did not make demand upon the Bank for re-crediting to his account the amount of such checks, less the credit above mentioned, until 29 March 1962, at which time the plaintiff delivered to the Bank an itemized list of the checks paid by the Bank and charged to the account, together with a statement of the credits acknowledged by the plaintiff to be due the Bank. For this reason the Bank contends that the plaintiff is barred from any right of recovery by G.S. 53-52, which reads as follows:

> "*Forged check, payment of.*—No bank shall be liable to a depositor for payment by it of a forged check or other order to pay money unless within sixty days after the receipt of such voucher by the depositor he shall notify the bank that such check or order so paid is forged."

When funds were deposited in the defendant Bank for credit to an account opened, and later carried on its books, in the name of the plaintiff, a relation of debtor and creditor between the Bank and the plaintiff was thereby created. The Bank has the burden of proving that it paid the debt when it relies upon payment as a defense to an action for the collection of it. Nothing else appearing, it is not sufficient for the Bank to show simply that it made a debit entry upon the account. It must show that it had authority from the creditor to make such entry or that the creditor is estopped or otherwise barred from asserting the Bank's lack of authority for the making of such entry. *Schwabenton v. Bank,* 251 N.C. 655, 111 S.E. 2d 856.

Here, it is admitted in the answer that "the sum of $13,956.45 was deposited in the defendant Bank in an account in the name of Nationwide Homes of Raleigh, N. C., Inc." Upon the former appeal in this action, *Nationwide Homes v. Trust Co.,* 262 N.C. 79, 136 S.E. 2d 202, Rodman, J., speaking for the Court, said:

> "The admission that funds were deposited with defendant in plaintiff's name placed the burden on it to show payment of the debt so created. * * * Here the stipulation that Currin forged the checks negates express authority to draw on the bank account; * * * The mere fact that an agent makes deposits to the credit of his principal is not of itself sufficient to

imply authority to draw checks on the account. * * * The burden was on defendant to show plaintiff's recognition of Currin's authority to write checks."

The trial judge found as a fact that all disbursements charged to this account were "by checks signed by Currin, which checks were unauthorized by and unknown to the plaintiff or to the parent corporation." He also found as facts that throughout the existence of this account the Bank was not aware "of any business of the said Currin or of the extent of Currin's practices, was unaware of any business of the plaintiff corporation, and made no effort to acquaint itself with either," and "that the defendant Bank had no notice of Currin's having described himself as general manager of plaintiff's local office." These findings of fact are supported by evidence in the record. Furthermore, the record does not disclose any exception by the defendant to any of them. For both of these reasons, the findings have the same effect as a verdict of a jury and are conclusive upon appeal. *Goldsboro v. R. R.,* 246 N.C. 101, 97 S.E. 2d 486; *St. George v. Hanson,* 239 N.C. 259, 78 S.E. 2d 885; *Burnsville v. Boone,* 231 N.C. 577, 58 S.E. 2d 351; *Buchanan v. Clark,* 164 N.C. 56, 80 S.E. 424.

The parties stipulated "that all checks drawn on the subject account are forgeries committed by S. T. Currin, Jr. and are not checks or drafts by the plaintiff."

It being thus clearly established that the relation of debtor and creditor existed, and that the payments by the Bank were upon checks drawn by Currin with neither express, implied nor apparent authority, such payments are not a defense to the claim of the plaintiff unless they are made so by G.S. 53-52.

In *Moore v. Humphrey,* 247 N.C. 423, 101 S.E. 2d 460, Bobbitt, J., speaking for the Court, said:

"Where facts are stipulated, they are deemed established as fully as if determined by the verdict of a jury. * * * A stipulation is a judicial admission. As such, 'It is binding in every sense, preventing the party who makes it from introducing evidence to dispute it, and relieving the opponent from the necessity of producing evidence to establish the admitted fact.' Stansbury, North Carolina Evidence, Sec. 166."

We need not consider in the present case the interesting question of whether the court is bound by a conclusion of law incorporated into a stipulation of the parties, where the record contains findings of fact, supported by evidence, casting doubt upon the correctness of such conclusion. Nor do we need, in this instance, to determine

whether a check signed in the name of the depositor by one who claims to be an agent, but who has no authority to draw such checks, is a forgery within the meaning of G.S. 53-52. In *State v. Lamb*, 198 N.C. 423, 152 S.E. 154, Adams, J., speaking for the Court, said, "[S]igning as the agent of another without authority does not constitute forgery." See, however, *Trust Co. v. Casualty Co.*, 231 N.C. 510, 57 S.E. 2d 809, 15 A.L.R. 2d 996.

If the checks signed by Currin, without authority from the plaintiff, were not forgeries, G.S. 53-52 has no application and affords to the defendant no defense to the claim of the plaintiff.

If these checks were forgeries, within the meaning of that statute, the defense of the statute is not available to the defendant because the plaintiff gave notice to the defendant Bank within the time provided by the statute.

In *Schwabenton v. Bank, supra*, this Court said, "The burden is on the bank seeking the protection afforded by this statute to show delivery of the voucher to the depositor more than sixty days before the claim is made." In that case, it was also held that the mailing of a bank statement, with cancelled checks, and the acceptance thereof from the Post Office by the depositor "in person or through his authorized agent," constituted a receipt by the depositor of such documents within the meaning of the statute, and that the depositor's failure to give the required notice to the bank, within the specified time thereafter, would bar his right of recovery even though the "authorized agent" so receiving the bank statement was the forger and, again, was unfaithful to his trust by concealing the voucher from the depositor.

In the present case, it is argued that Currin received some of the statements and cancelled checks relating to this account prior to 28 December 1961. Assuming that the evidence would be sufficient to support a finding that Currin did so receive the statements and cancelled checks, the evidence conclusively shows that the plaintiff was not aware of the existence of this account. Currin was not authorized by the plaintiff to open the account, to draw checks on it or to receive and examine bank statements pertaining to it. Therefore, the rule of the *Schwabenton* case, as to when the depositor received the cancelled checks, does not apply to the present situation. Thus, the conclusion of the trial judge that the plaintiff did not receive the vouchers and statements until on or about 28 December 1961 is supported by findings of fact which, in turn, are supported by evidence.

Immediately upon the discovery of the existence of the bank account, through its discovery of the statements and checks so returned by the defendant to Currin, the plaintiff notified the defend-

ant Bank that the account was unauthorized and that the purported signature of its secretary, Coleman, upon the card with which the account was opened, was a forgery. G.S. 53-52 does not require notice in any specified form. It is sufficient that within the time allowed by the statute the depositor gives to the bank notice sufficient in content to advise the bank that the debits charged to the depositor's account are based upon checks which are "forged." Notice to the bank that the entire account is unauthorized and unknown to the person in whose name it is opened necessarily advises the bank that any check charged thereto, which check purports to be drawn in the name of such account holder was drawn without authority and with fraudulent intent — a forgery within the contemplation of the stipulation in this record. Consequently, there was no error in the conclusion of the trial court that notice to the defendant Bank "of the forged and unauthorized account and checks was given on or about December 28, 1961, in accordance with G.S. Sec. 53-52." The defendant having been given the notice required by the statute, there was no error in the court's conclusion that "none of the plaintiff's claim is barred."

Neither the plaintiff nor its parent corporation was put on notice of the existence of the account in the defendant Bank by reason of the fact that a check, drawn by the parent, payable to one A. L. Franklin, was first endorsed by Franklin and thereafter endorsed by Currin for deposit into the account in question. There is no duty upon the depositor to examine endorsements upon his genuine checks. 10 Am. Jur. 2d, Banks, § 513. There is no evidence that the plaintiff did, in fact, observe the endorsements upon this check and thereby learn of the unauthorized account. There was no error in the court's conclusion with respect to this matter.

It appears from the record that the judgment was signed, by consent, out of term and out of the district on 27 August 1965, and that the defendant caused appeal entries to be entered on the docket on 1 September 1965, but did not file any exceptions to the judgment, or to the refusal of the court to find facts as requested by the defendant, until the service of its statement of the case on appeal on 28 December 1965. This was not in accordance with the requirements of G.S. 1-186. Furthermore, the defendant's statement of its assignments of error does not comply with Rule 19(3) of the Rules of Practice in this Court, in that it does not appear from the assignments, themselves, what question is intended to be presented thereby, but we are directed on "a voyage of discovery" through the pages of the record. See *Hines v. Frink*, 257 N.C. 723, 127 S.E. 2d 509; *Hunt v. Davis*, 248 N.C. 69, 102 S.E. 2d 405. We have, never-

theless, considered each of the assignments as if it had been properly set forth and we find no merit therein.

No error.

Moore, J., not sitting.