CLAUDE STIREWALT, PLAINTIFF v. VALDESE SAVINGS AND LOAN ASSOCIATION, ORIGINAL DEFENDANT, AND WACHOVIA BANK & TRUST COMPANY, N. A., THE NORTHWESTERN BANK, AND BETTY STIREWALT CARSWELL, THIRD PARTY DEFENDANTS

No. 7125SC166

(Filed 26 May 1971)

1. Banks and Banking § 11— action to recover payments from savings account — payment of funds to depositor's wife — implied authority of the wife

In a depositor's action to recover funds that were deposited with a savings and loan association and that allegedly were wrongfully paid out by the association to the depositor's wife, the evidence was sufficient to support a finding that the wife had implied authority to

Stirewalt v. Savings & Loan Assoc.

draw checks on the depositor's account payable to the depositor, where the evidence was undisputed that the dispositor on several occasions had authorized his wife to obtain checks for him and that he did nothing differently on the occasions which he contends his wife was not authorized to act for him.

2. **Principal and Agent § 5— power of agent to bind his principal — negligence of principal**

   The power of an agent to bind his principal may include not only the authority which has actually been conferred, but also the authority which may be implied as usual and necessary to complete the task entrusted to him; it may be further extended by reason of acts indicating authority which the principal has approved or knowingly or, at times, even negligently permitted the agent to do in the course of his employment.

3. **Banks and Banking § 11— authority of agent to endorse checks payable to principal**

   An agent's power or authority to endorse checks payable to his principal cannot be inferred from express authority to receive checks for his principal.

4. **Banks and Banking § 11— endorsement of depositor**

   A depositor is not required to examine the endorsements on its own genuine checks.

5. **Banks and Banking § 11; Estoppel § 8— depositor's action to recover payments from savings account — payments to depositor's wife — estoppel**

   In a depositor's action to recover funds that were deposited with a savings and loan association and that allegedly were wrongfully paid out to the depositor's wife, the evidence was sufficient to support a finding that plaintiff's conduct over a nine-year period estopped him from asserting his claim against the association, especially where there was evidence (1) that the depositor had not looked at his account book during the period his wife had made withdrawals therefrom; (2) that he made no inquiry concerning the status of his account; (3) that the account book was left in a place accessible to his wife; (4) that he took his wife's word as to reporting of savings dividends on his income tax; and (5) that a statement of his account was mailed to him each year.

APPEAL by plaintiff from *Gambill, Judge,* 31 August 1970 Special Civil Session, Superior Court of BURKE County.

This is an action to recover funds deposited by plaintiff with Valdese Savings and Loan Association (Savings and Loan) and allegedly wrongfully paid out by Savings and Loan. By its answer, Savings and Loan averred that all withdrawals from the account of plaintiff were made by plaintiff, individually, and

by and through his duly authorized agents, Shirley Stirewalt, his wife, and Betty Stirewalt Carswell, his daughter, and that plaintiff received either the funds or the benefit therefrom of all checks issued by Savings and Loan and charged to his account; that plaintiff constituted, by his conduct, his wife and daughter as his agents and never withdrew their authority but condoned and ratified their actions; that plaintiff was guilty of negligence in placing his passbook in the hands of his agents and requesting withdrawals from time to time without withdrawing the authority duly given his agents; that plaintiff was negligent in failing to inspect his passbook from 1957 to the time of his wife's death in 1966; that plaintiff was negligent in failing to examine Federal Tax Forms 1099 sent each year showing earned interest and his income tax returns showing interest earned, both of which would have indicated steadily decreasing interest earned and, therefore, steadily decreasing principal. Savings and Loan also set up a plea of estoppel and set up cross actions against the estate of Shirley Stirewalt, Betty Stirewalt Carswell, The Northwestern Bank and The Wachovia Bank and Trust Company.

It was stipulated that as of 29 June 1957, in account number 31370 at Valdese Savings and Loan Association there was deposited $9,574.10; that there were withdrawals prior to that time by the same people; that three checks (dated 3 August 1944, 31 December 1957, and 6 June 1966) were drawn at the instance of plaintiff's wife with his authority and that he cashed them. It was further stipulated that the cross actions would not be heard but would be severed for later hearing. The matter was heard before the judge without a jury. The court, upon its findings of fact and conclusions of law, entered judgment against plaintiff and taxed plaintiff with the costs. Plaintiff appealed.

*John H. McMurray for plaintiff appellant.*

*Mitchell and Teele, by H. Dockery Teele, Jr., for defendant appellee.*

MORRIS, Judge.

Plaintiff testified that he was 56 years of age; that he was married to Shirley Stirewalt who died in November 1966; and that he had three children: Betty, age 34, Joan, age 30, and Steve, age 17; that he was a knitter at Valdese Alba for 26 years until 1957 when he quit and that he is now a painter, an occupa-

tion he started in 1960; that he and his wife lived together until her death; that he had an account in Valdese Savings and Loan, represented by optional savings share account book No. 31370, and on 29 June 1957 there was $9,574.10 in the account; that the check dated 31 December 1957, payable to him for $140 was endorsed by him but he didn't recall what he did with the money; that check dated 3 August 1964, for $1,142 payable to him was endorsed by him and he thought the money was "put in a furnace" but he wasn't sure; that check drawn on the Savings and Loan Association dated 6 June 1966 for $848 payable to him was endorsed by him and the proceeds used for the purchase of a car. He testified that he did not remember making any other withdrawals and did not authorize anyone to sign his name as endorser on any of the other checks than the three previously mentioned. He did not make any check or investigation of his account before the death of his wife. He laid the account book in a box and didn't even look at it. The money in the account was earned when he worked at Alba. He never went to the Savings and Loan until after his wife died. He kept the deposit book in a box at his home and had not seen it in a long time. His wife had made another book to lead him to believe that it was the same one. He first learned that there had been checks drawn on the account not authorized by him the day before his wife died. He found the real book in her pocketbook, examined it and knew what had happened. He made no inquiry about the account over the years because he thought it was safe. His wife filed joint tax returns during those years. Between 1957 and 1966 he had no dividend information from Savings and Loan indicating his account was diminishing. He looked at the tax returns, knew the dividends were reported for income tax, and signed the returns, but took his wife's word for the amount. He knew at the time what the amount was. He did not remember how he authorized her to withdraw the money which he testified he got and about which he had knowledge. She took the book, the check was made to him, she brought it to him, and he endorsed it. He looked at the book on those occasions, but she had fixed the book each time. The book used by his wife was for account number 32532. At the top of the first page, the name "Steve Stirewalt" is stricken through. Under that appears the name "Claude Stirewalt, Trustee" and the word "Trustee" is stricken through. The first page shows a deposit of $5 on 8 January 1960. The second page is pasted to that page, and written thereon is "Account brought forward from B & L Book No.

1." Various dates and' dividends are shown. On 30 June 1964 deposits and dividends totaled $14,996.44. A withdrawal of $1,142.05 is indicated on 3 September 1964. Subsequent dividends are added and a withdrawal of $848 on 6 June 1966 leaving a balance indicated of $13,854.39. He went to the fifth grade in school.

On cross-examination plaintiff testified that after he quit Alba in 1957 he worked at different places and part of the time was unemployed. His wife finished high school. She paid the light and power bills because it was handy. She took care of paying some of plaintiff's bills. He paid the income tax by cash. He paid the county tax most of the time. She bought groceries. She bought the daughters' clothing but didn't pay for them. She was working but he didn't know how much she was making. He had been convicted of driving drunk but was not in an alcoholic condition for most of the period of time that his wife was handling the business matters in his home. The last time he authorized his wife to go to the Savings and Loan to withdraw some money was in 1966 but he didn't remember how that was done. "I would answer that as well as I can remember she would always get something from them, and I would sign it and she would take it back. I don't know exactly what I signed. Yes, I did tell her to go up there and get the money and she went and got it. I approved the way she did this as long as I could get something from them." He was satisfied and approved the way the $846 was withdrawn in June 1966. He did not tell the Savings and Loan not to let his wife withdraw any money at any other time. He was satisfied with the way the 3 August 1964 withdrawal of $1,142 was handled and did not tell the Savings and Loan not to let his wife withdraw any other funds. He assumed he would have to sign something before they would let the money out. He put the passbook in his wife's possession. It was kept in a box and they all knew where it was. "I trusted her with the passbook. I didn't hide it. I gave it to her and told her to go get the money out of the Savings and Loan." The withdrawal of the other checks was different. The difference was that notes were sent. When these withdrawals were made, she had the passbook and somebody took a note and the book and got them. Plaintiff remembered having only one account at the Savings and Loan, although account number 31368 was a joint account with him and his wife and he signed the signature card. He didn't remember when the account was opened nor who

withdrew funds therefrom nor whether he approved of the method she used to withdraw funds from that account. Form 1099 for 1963, 1964 and 1965 shows the dividends for those years. The address was Claude Stirewalt, Route 2, Connelly Springs. His wife was sick for seven months before she died and went to the doctor some two to four times a week. Sometimes he paid the medical bills and sometimes she did. Her father was killed in the war and she got his insurance and led him to believe she had about $3,000 in the bank. She wasn't the saving kind. Part of the money did come from the sale of land owned by him and his wife together and he deposited $2500 in the Savings and Loan two days after the property was sold. It could have sold for $5,000, but he did not remember whether he gave his wife any part of the money. When his wife died, they had some property in both names and he received the proceeds of her life insurance. She had a truck-van. He paid the bills she had. He did not remember whether he filed a claim in her estate. Check for $200 dated 4 August 1944; check for $250 dated 15 July 1950; check for $500 dated 5 September 1950; check for $225 dated 14 October 1955, all drawn payable to him and all endorsed by him got to him the same way. She brought the check and passbook back to him. Check dated 13 February 1957 for $1500 was payable to him but he was not certain whether the endorsement was his. When he sent her to get the money, he did not authorize her to sign his name.

Betty Carswell testified that she is the plaintiff's daughter and that she made a number of withdrawals from the Savings and Loan on plaintiff's account. On those occasions she took with her the passbook and a note signed by her mother. A typical example of the notes is the following: "Evelyn, Claude wants a check for $125.00. Thank you. Please give to Betty." "Evelyn, please give Betty a check for $50.00 for Claude. Shirley Stirewalt." All of the daughter's dealings were with her mother. Plaintiff never gave her the book nor authorized her to get a check, nor did she ever carry the book or check to him. They were carried to her mother. She signed her father's name on some of the checks but never received any money therefrom. The witness and her husband frequently took her mother to the doctor in Lenoir. Her mother was pretty sick for a while before she died. Plaintiff did go with his wife to the doctor on occasions. Plaintiff drank a lot on weekends. Her mother handled the payment of bills but witness did not know if it was her money.

Joan Reid testified that she is a daughter of plaintiff and that on a few occasions she would take notes written by her mother to the Savings and Loan, and "they would give me a check in an envelope and I would take it to her, and I never saw the check or how much it was." Her mother was sick with cancer for seven months before her death. Her mother started to work when witness was six years old and worked until she got sick.

L. E. Deaton, Vice-President of Savings and Loan, testified that no question was ever raised by plaintiff as to any withdrawals by his wife from funds on deposit. After the first or second withdrawal, the witness did not handle the account. The policy is that "if we know a member of the family, such as the wife, we know who they are, if we know who is the wife, if she brings a written statement from her husband, along with the passbook, and requested a withdrawal, why, we have honored it, but it's always done by check drawn on the account of the account holder." In this instance, in the latter years, the wife had signed the note "but the pattern had been set, and we never suspected there was anything wrong; if you don't honor a wife on these things, well, it would make an awful lot of people mad." Forms 1099 were mailed to plaintiff. Plaintiff never notified the witness not to allow his wife to withdraw the funds either in the joint account or in his individual account.

On cross-examination he testified that all of the checks were paid by either Wachovia Bank or Northwestern Bank, came back to the Savings and Loan, and were held in their file. At no time did he have any written authorization in the file for any checks to be paid or delivered against the Claude Stirewalt account or for anyone to sign his name to his individual account.

All of the checks in question were introduced into evidence. The endorsements thereon indicate that 31 of the checks were cashed by hospitals, drug stores, and doctors—the total amount of these being some $4200.

On the evidence the court found as facts the following:

"That the Plaintiff was married to Shirley Stirewalt and lived continuously with her up until her death on November 20, 1966; that the Plaintiff was the owner of an Optional Savings account in The Valdese Savings and Loan Association bearing Account No. 31370 and as of June 30, 1957,

had $9,574.00 in said account; that between June 30, 1957, and November 20, 1966, sixty-five withdrawals were made from the individual account of the Plaintiff in The Valdese Savings and Loan Association leaving a balance of $77.62 as of the date of the death of Shirley Stirewalt, the Plaintiff's wife.

That the Plaintiff and his wife also were the owners of a joint Optional Savings account in The Valdese Savings and Loan Association bearing Account No. 31368, which account showed deposits and withdrawals from said account of several thousand dollars over a period of years and that all withdrawals from said account were made by Shirley Stirewalt without objection by the Plaintiff, Claude Stirewalt; that said account is still in existence at The Valdese Savings and Loan Association although the Plaintiff denies any knowledge of this account or any of its deposits and withdrawals.

That on numerous occasions the Plaintiff caused his wife, Shirley Stirewalt, to go to The Valdese Savings and Loan Association with his passbook and make withdrawals from his individual account; that his wife would on such occasions bring the checks back to him for his endorsement on said checks and that he received said funds or the benefit therefrom; that he approved of the method of such withdrawals and held his wife out as his agent to The Valdese Savings and Loan Association on such occasions; that he never revoked any authority given his wife to make such withdrawals and thereby held her out as his agent with authority or apparent authority to make other withdrawals on his behalf.

That all sixty-five checks were drawn payable to Claude Stirewalt and delivered to his agent or apparent agent; that all of said checks were withdrawn by the agent or apparent agent of Claude Stirewalt in the same manner even though the Plaintiff contends that he had only authorized his wife to make withdrawals on certain occasions.

That the Plaintiff filed joint income tax returns with his wife, Shirley Stirewalt, for the years during which said withdrawals were made, that said returns showed or should have shown the amount of interest credited by The Valdese

Savings and Loan Association to his account each year and he knew or should have known that the declining interest each year indicated a reduction in the balance of his account; that he should have been put on notice that the balance in said account was reducing each year and had the opportunity to have discovered the withdrawals which he claims were improperly made by his wife, Shirley Stirewalt; that Form 1099 was mailed to the address of the Plaintiff by The Valdese Savings and Loan Association for the calendar years 1963, 1964 and 1965 showing a sharp reduction in the interest credited to his account each year and he knew or should have known that improper withdrawals were being made and had the opportunity to have discovered the same.

That the Plaintiff's wife, Shirley Stirewalt, was sick for many years prior to her death on November 20, 1966; that she had migraine headaches and other infirmities which ultimately resulted in her death from a prolonged illness with cancer; that the sixty-five checks introduced into evidence show that 31 checks were cashed at the offices of doctors, hospitals and drug stores totalling $4,215.83, and the Court finds as a fact that such sums of money was *(sic)* used or apparently used for the medical treatment and care of the wife of the Plaintiff for which he would have been legally liable;

That the Plaintiff did not present his passbook to The Valdese Savings and Loan Association from 1957 until the date of death of his wife for the crediting of dividends or interest; that he made no effort during all of said years to ascertain the true balance of his account, but that he entrusted such matters to his wife; that he made no effort to discover the improper withdrawals although he had many opportunities to do so."

Based on the findings of fact the court concluded as a matter of law:

"1.   That the Plaintiff by his own conduct in constituting his wife, Shirley Stirewalt, his agent to make withdrawals from The Valdese Savings and Loan Association in his Optional Account No. 31370 on numerous occasions and his failure to withdraw such authority, was such that he did make his wife, Shirley Stirewalt, his agent with

authority or apparent authority to make all of such withdrawals from his account in The Valdese Savings and Loan Association.

2. That the Plaintiff was put on notice or should have been put on notice of the unauthorized withdrawals and his failure to discover such unauthorized withdrawals constituted negligence on his part and such negligent conduct on his part precludes any recovery from The Valdese Savings and Loan Association.

3. That because of the conduct of the Plaintiff as set forth in the foregoing findings of fact, The Valdese Savings and Loan Association would be held to a higher standard of care than required by law and the Plaintiff should not be allowed to recover because of his own conduct.

4. That the Plaintiff take nothing by his action and that the Plaintiff be taxed with the costs of Court."

Plaintiff excepts to the findings of fact on the ground that they are not supported by competent evidence and to the conclusions on the ground that they are based on findings not supported by evidence and are in law erroneous.

He contends that evidence of Forms 1099 and other evidence as to income tax is inadmissible. Plaintiff testified with respect to Forms 1099 on cross-examination. No objection to the testimony was interposed. Defendant in its answer had raised the issue of estoppel and plaintiff's own negligence. The evidence was competent on these issues.

[1, 2] In our opinion the testimony certainly constitutes more than a scintilla of evidence tending to show that the wife had implied authority to request checks to be drawn on plaintiff's account payable to plaintiff.

" 'While as between the principal and the agent the scope of the latter's authority is that authority which is actually conferred upon him by the principal, which may be limited by secret instructions and restrictions, such instructions and restrictions do not affect third persons ignorant thereof, and as between the principal and third persons the mutual rights and liabilities are governed by the apparent scope of the agent's authority, which is that authority which

the principal has held the agent out as possessing, or which he has permitted the agent to represent that he possesses, and which the principal is estopped to deny. The apparent authority, so far as third persons are concerned, is the real authority, and when a third person has ascertained the apparent authority with which the principal has clothed the agent, he is under no further obligation to inquire into the agent's actual authority. The authority must, however, have been actually apparent to the third person, who, in order to avail himself of the rights thereunder, must have dealt with the agent in reliance thereon, in good faith, and in the exercise of reasonable prudence, in which case the principal will be bound by the acts of the agent performed in the usual and customary mode of doing such business, although he may have acted in violation of private instructions, for such acts are within the apparent scope of his authority.' (Citations omitted). 'Accordingly, persons who do not know what the agent's authority really is are justfied in dealing with him upon the assumption that he has the authority which the principal indicates by his conduct that the agent possesses.' " *Warehouse Co. v. Bank,* 216 N.C. 246, 4 S.E. 2d 863 (1939).

The power of an agent to bind his principal may include not only the authority which has actually been conferred, but the authority which may be implied as usual and necessary to complete the task entrusted to him, and " 'it may be further extended by reason of acts indicating authority which the principal has approved or knowingly or, at times, even negligently permitted the agent to do in the course of his employment'." *Smith v. Kappas,* 218 N.C. 758, 12 S.E. 2d 693 (1940).

The evidence is undisputed that on several occasions during the existence of plaintiff's account, he had authorized his wife to obtain a check for him and accepted the benefits therefrom. His own evidence was that he did nothing differently on the occasions which he contends his wife was not authorized to act for him.

[3, 4] We are aware that an agent's power or authority to endorse checks payable to his principal cannot be inferred from even express authority to receive checks for his principal.

*Construction Co. v. Trust Co.*, 266 N.C. 648, 147 S.E. 2d 37 (1966). There is nothing in the evidence before us to indicate any authority whatever of plaintiff's wife or daughter to endorse his name on the checks. Savings and Loan, in this situation, was a depositor of Wachovia Bank and Trust and of Northwestern Bank. As a depositor, it is not required to examine the endorsements on its own genuine checks. *Nationwide Homes v. Trust Co.*, 267 N.C. 528, 148 S.E. 2d 693 (1966). Plaintiff might well look to his agent for reimbursement.

[5]  Plaintiff contends that the evidence is insufficient to allow defendant to prevail upon its plea of estoppel. Justice Johnson in *Hawkins v. Finance Corp.*, 238 N.C. 174, 77 S.E. 2d 669 (1953), said:

> "Therefore, in determining whether the doctrine of estoppel applies in any given situation, the conduct of both parties must be weighed in the balances of equity and the party claiming the estoppel no less than the party sought to be estopped must conform to fixed standards of equity. As to these, the essential elements of an equitable estoppel as related to the party estopped are: (1) Conduct which amounts to a false representation or concealment of material facts, or, at least, which is reasonably calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party afterwards attempts to assert; (2) intention or expectation that such conduct shall be acted upon by the other party, or conduct which at least is calculated to induce a reasonably prudent person to believe such conduct was intended or expected to be relied and acted upon; (3) knowledge, actual or constructive, of the real facts. As related to the party claiming the estoppel, they are: (1) lack of knowledge and the means of knowledge of the truth as to the facts in question; (2) reliance upon the conduct of the party sought to be estopped; and (3) action based thereon of such a character as to change his position prejudicially. (citations omitted)."

In our opinion, the evidence on the record before us is sufficient to support a finding that plaintiff's conduct was sufficient to estop him from successfully asserting a claim against defendant. Certainly the evidence of his negligence is plenary. By his own negligence he put it in the power of his wife to commit the wrong of which he now complains.

---

Ingold v. Light Co.

---

Plaintiff contends that findings of fact that 31 of the funds obtained by plaintiff's wife were used to pay medical bills and drug bills for which he was legally responsible are not supported by competent evidence. With these contentions we are constrained to agree. The evidence was that plaintiff's wife had been very sick for seven months before she died, that she had severe headaches and suffered from cancer. It is true that 31 of the checks obtained by her were cashed by a hospital, drugstore, or doctor, but no check was obtained by her during the seven months preceding her death. There is no evidence of any illness of the wife prior thereto which would have necessitated or supported a finding that the funds were used for payment of sums for which plaintiff was legally responsible. The last check issued prior to death of plaintiff's wife was on 6 June 1966 in the amount of $848. This check plaintiff admits was obtained upon his request, endorsed by him, and used for the purchase of a car in Charlotte. The judgment must, therefore, be modified to omit that portion which is the subject of plaintiff's exception 32 as follows: " . . . and the Court finds as a fact that such sums of money was *(sic)* used or apparently used for the medical treatment and care of the wife of the plaintiff for which he would have been legally liable." With this modification the judgment of the trial court is

Affirmed.

Judges BROCK and HEDRICK concur.