IN THE MATTER OF: WILLIE BEATTY, JR. S. S. No. 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 LONGSHOREMAN-CLAIMANT, ET AL AND WILMINGTON SHIPPING COMPANY, POST OFFICE BOX 1809, WILMINGTON, NORTH CAROLINA 28401 ET AL AND EMPLOYMENT SECURITY COMMISSION OF NORTH CAROLINA, RALEIGH, NORTH CAROLINA

No. 745SC282

(Filed 7 August 1974)

Master and Servant § 108— unemployment compensation — longshoremen — guaranteed annual income plan — unavailability for work

The Employment Security Commission did not err in determining that longshoremen who applied for unemployment benefits were not "available for work" within the meaning of G.S. 96-13(3) by reason of a collective bargaining agreement establishing a guaranteed annual income fund to provide supplemental benefits for union members unable to obtain employment and requiring the longshoremen to be at the union hiring hall during certain hours each morning in order to receive such benefits.

APPEAL by claimant from Peel, Judge, 14 January 1974 Session of NEW HANOVER County Superior Court upholding Employment Security Commission Decision Nos. 4596 and 4597.

The 126 claimants in this matter are longshoremen employed at Wilmington, Southport, and Morehead City. They are employed pursuant to a collective bargaining agreement negotiated between the South Atlantic Employers Negotiating Committee, an employers group representing the major ports in the South Atlantic area, and the International Longshoreman's Association, AFL-CIO. The collective bargaining agreement provided for the establishment of a guaranteed annual income fund (GAI) to provide supplemental benefits for those employees who are union members and seek employment but are unable to obtain it. The GAI fund is exempt from taxation pursuant to Section 501(c)(17) of the Internal Revenue Code. It provides benefits for employees who have worked a stated number of

hours the previous year. As a prerequisite to receiving benefits under the fund, each longshoreman is required to be willing and available for work.

To be eligible for the GAI benefits, the longshoremen must report to the union hiring hall each week day between the hours of 6:00 a.m. and 7:30 a.m. He is issued a badge which he presents upon arrival, and this practice is called "badging-in." If work is not available, he may badge-out in the same fashion between 8:15 a.m. and 9:15 a.m. This badging-in and badging-out must be accomplished even if there are no ships in the harbor to be loaded or unloaded. After badging-out, the longshoreman is available for part-time employment. However, if he accepts a full time position he loses all benefits under the GAI plan.

The claimants applied to the Employment Security Commission seeking unemployment benefits because of the lack of suitable longshoreman work available for them. Appropriate hearings were conducted by the Employment Security Commission. No exceptions were taken to any of the findings of fact of the Commission. The Commission determined that the most suitable alternate employment available for the claimants was in the construction business in the appropriate areas but that the badging-in and badging-out requirement effectively took the claimants out of the job market. Construction employers in the areas prefer permanent workers, but hire temporary help beginning not later than 8:00 a.m.

Holding that the badging-in and out process of the GAI effectively took the longshoremen out of the labor market, the Commission denied benefits. The claimants appealed to the Superior Court which upheld the ruling of the Employment Security Commission.

*Andrew A. Canoutas and Julius Miller for claimants-appellants.*

*H. D. Harrison, Jr., for the Employment Security Commission, appellee.*

CARSON, Judge.

Benefits were denied the claimants pursuant to the provisions of G.S. 96-13(3). It provides:

Section 96-13. Benefit eligibility conditions.—An unemployed individual shall be eligible to receive benefits with

respect to any week only, if the Commission finds that—
(3) He is able to work, and is available for work: Provided
that no individual shall be deemed available for work un-
less he establishes to the satisfaction of the Commission
that he is actively seeking work.

The question before us is whether the claimants are able
to work and are available for work. Our Supreme Court in the
case of *In re Watson*, 273 N.C. 629, 161 S.E. 2d 1 (1968), at
pages 633-634 describes these phrases as follows:

The term "able to work," "available for work" and "suit-
able employment" are not precise terms capable of applica-
tion with mathematical precision. They are somewhat akin
to the terms "reasonable man" and "due care," which con-
tinue to defy the best effort of both the lexicographer and
the professor of torts to define them satisfactorily and
yet are applied with considerable success each day by juries
through the application of common sense and experience.
A large measure of administrative discretion must be
granted to the Employment Security Commission in the
application of these terms in the statute to specific cases.

The Employment Security Commission, applying its discre-
tion, found that the GAI plan effectively removed the longshore-
men from the labor market. We do not feel that it abused its
discretion in so ruling. While the claimants need not be avail-
able at all hours to be "available," the GAI plan requires their
presence every week day morning between the indicated hours.
The finding by the Commission that the temporary construc-
tion employment must commence at 8:00 a.m. was not the sub-
ject of an exception, and is thus binding on us on appeal.
*Nationwide Homes v. Trust Co.*, 267 N.C. 528, 148 S.E. 2d 693
(1966); *Thompson v. Hayes*, 17 N.C. App. 216, 193 S.E. 2d
488 (1972). By having to be at the longshoreman's hiring hall at
these hours, the claimants have effectively, voluntarily removed
themselves from the labor market and are not entitled to un-
employment benefits.

The negotiated agreement between the longshoremen and
the South Atlantic Employers Negotiating Committee is a
commendable effort to provide security and income for the long-
shoremen. While we can appreciate the effort of the longshore-
men to protect those for whom work is not available, it is

apparent that this plan is not compatible with Chapter 96. If the public policy of this State should be changed to provide some type of unemployment compensation, this matter must be addressed to the General Assembly.

No error.

Judges BRITT and HEDRICK concur.